UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PROSHIPLINE, INC.,

        Plaintiff,

vs.                               Index No.: 07-CV-10969 (RWS)

ASPEN INFRASTRUCTURES, LTD.
f/k/a SUZLON INFRASTRUCTURE, LTD.,

        Defendant.

**PLAINTIFF PROSHIPLINE INC.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO VACATE OR REDUCE THE ORDER FOR ATTACHMENT AND FOR COUNTERSECURITY**

                                        HILL RIVKINS & HAYDEN LLP
                                        *Attorneys for Plaintiff ProShipLine, Inc.*
                                        45 Broadway, Suite 1500
                                        New York, New York 10006
                                        Tel: (212) 669-0600
                                        Fax: (212) 669-0699

            By:    John J. Sullivan (JS-1037)
                   Christopher M. Panagos (CP-2199)

# TABLE OF AUTHORITIES

**Federal Cases** **Page**

Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.,
460 F.3d 434 (2d Cir. 2006) .................................................. 4

Archawski v. Hanioti, 350 U.S. 532 (1956) ................................... 2

Belvedere v. Compania Plomari de Vapores, S.A.,
189 F.2d 148 (5th Cir. 1951) .................................................. 3

Bergesen v. Lindholm, 760 F.Supp. 976 (D.Conn.1991) ...................... 8

Chiquita Int'l, Ltd. v. MV Bosse, 518 F. Supp. 2d 589 (S.D.N.Y. 2007) ......... 6

Compania Argentina de Navecracion Dodero v. Atlas Martime Corp.,
144 F. Supp. 14 (S.D.N.Y. 1956) ............................................. 2

Daeshin Shipping Co. Ltd. v. Meridian Bulk Carriers, Ltd.,
2005 WL 2446236 (S.D.N.Y. 2005) .......................................... 8-9

Dolco Investments, Ltd. v. Moonriver Development, Ltd.,
486 F. Supp. 2d 261 (S.D.N.Y. 2007) ........................................ 2-4

Dongbu Express Co. v. Navios Corp.,
944 F. Supp 235 (S.D.N.Y. 1996) ............................................ 8-9

Integrated Container Svc., Inc. v. Starlines Container Shipping, Ltd.,
476 F. Supp. 119 (S.D.N.Y. 1979) ............................................ 5

Rapture Shipping Ltd. v. Allround Fuel Trading B.V.,
2006 WL 2850206 (S.D.N.Y. 2006) .......................................... 7
2006 WL 2474869 (S.D.N.Y. 2006) .......................................... 7

The Rice Co. v. Express Sea Transport Corp.,
2007 WL 4142774 (S.D.N.Y. 2007) .......................................... 9

Rolls Royce Industrial Power v. M.V. Fratzis M.,
1995 WL 846690 (S.D.N.Y. 1995) ............................................ 8

Royal Swan Navigation Co., Ltd. v. Global Container Lines,
868 F. Supp. 599 (S.D.N.Y. 1994) ........................................... 4-5,8

Sea Transp. Contractors, Ltd. v. Indus. Chemiques du Senegal,
411 F. Supp. 2d 386 (S.D.N.Y. 2006) ........................................ 9

Transportes Navieros y Terrestes, S.A. de D.V. v.
Fairmount Heavy Transport N.V., 2007 WL 1989309 (S.D.N.Y. 2007) . . . . . . . . . . 9

Yayasan Sabah Dua Shipping SDN BHD v. Scandanavian Liquid Carriers, Ltd.,
335 F. Supp. 2d 441 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-5

**Statutes and Rules**

Fed. R. Civ. P. Supplemental Admiralty & Maritime Rule B . . . . . . . . . . . .   1,3-4,6

Fed. R. Civ. P Supplemental Admiralty & Maritime Rule E . . . . . . . . . . . .   1,8-11

## **PRELIMINARY STATEMENT**

Plaintiff ProShipLine, Inc., (hereinafter "PSL") submits this memorandum in opposition to the motion pursuant to Supplemental Admiralty Rule E of defendant Aspen Infrastructures, Ltd., (hereinafter "AIL") to vacate an order of maritime attachment against the tangible or intangible property of the defendant located in this district. Contrary to AIL's assertions, PSL's claims are unquestionably within this Court's admiralty jurisdiction and can support maritime attachment pursuant to Rule B. PSL fully intends to arbitrate its claims against AIL, but has met hurdles caused by the wildly inconsistent positions AIL has asserted in connection with the arbitration proceedings and the various court proceedings involved in this dispute. AIL's argument that it is present in the Southern District of Texas is at odds with precedent in this circuit setting the requirements for presence within the meaning of Rule B, and is undercut by its own commencement of a Rule B action against PSL's parent company in this district. The calculation for the monetary amount of PSL's claim is set out below and satisfies the requirements for maintaining an attachment under Rule B. Finally, AIL's demand for countersecurity is entirely at odds with the positions it has taken throughout this dispute.

The facts relevant to PSL's opposition are set out in the accompanying declarations of John J. Sullivan and Michael Polonsky, and the exhibits thereto.

1

## POINT 1

## PROSHIPLINE HAS STATED A MARITIME CLAIM WITHIN THIS COURT'S ADMIRALTY JURISDICTION

AIL argues that because PSL's claim is largely executory, it does not constitute a cause of action within this Court's admiralty jurisdiction, requiring vacatur of the attachment. AIL has quoted a recent decision of this Court, while overlooking the rationale of the earlier cases on which this Court relied. In Dolco Investments, Ltd. v. Moonriver Development, Ltd., 486 F. Supp. 2d 261 (S.D.N.Y. 2007), this Court held that the alleged breach of the unperformed aspects of a long term contract to supply goods to a vessel is not within the court's admiralty jurisdiction to support an attachment. This Court cited to the cases of Compania Argentina de Navecracion Dodero v. Atlas Martime Corp., 144 F. Supp. 14 (S.D.N.Y. 1956), and the Supreme Court case on which it relied, Archawski v. Hanioti, 350 U.S. 532 (1956). Judge Dawson in Compania Argentina unequivocally rejected the argument that AIL asserts now, relying upon Archawski:

> Respondent urges that the libel is not within the admiralty jurisdiction of this Court on the ground that the action is one alleging a breach of an executory contract, and that such actions are not within the admiralty jurisdiction of this Court. If such was ever the law, it is certainly not the law since the decision of the United States Supreme Court in Archawski...

144 F. Supp. at 14.

The rationale behind this Court's holding in Dolco Investments must necessarily be limited to agreements to supply goods to vessels[1]. An agreement to supply goods is not uniquely maritime, and does not attain the maritime character until the goods are actually supplied to a vessel, as opposed to merely its owner. A vessel owner can accept

---

[1] PSL is not aware of any court's application of the rule discussed in Dolco to any cases other than those involving contract to supply goods to vessel owners.

2

delivery of vessel supplies on land, for example, by delivery of fuel into shoreside tanks. AIL correctly has conceded that the underlying agreement, of which PSL maintains that it is the assignee, is within this Court's admiralty jurisdiction, as AIL asserted the agreement as the basis for admiralty jurisdiction in its own Rule B complaint against PSL's affiliate and assignor, EP-Team, Inc.

    AIL's sole argument regarding jurisdiction is that the executory parts of the agreement do not support maritime jurisdiction. The error of AIL's overly broad reading of this Court's decision in Dolco Investments is manifest in the Fifth Circuit's decision in Belvedere v. Compania Plomari de Vapores, S.A., 189 F.2d 148 (5th Cir. 1951). The Fifth Circuit drew a critical distinction between contracts of affreightment, which are executory, and charter parties. Although an executory contract of affreightment did not give rise to a maritime lien or an *in rem* claim against a particular vessel, unlike a charter party, such contracts were nevertheless maritime contracts within the court's admiralty jurisdiction. 189 F.2d at 150. Similarly in this case, AIL's termination of PSL's right to continue performance under the Services Contract gives rise to a maritime claim even if PSL may not have the right to an *in rem* claim or otherwise have a maritime lien against any property of AIL. This maritime claim is sufficient to support the order of attachment the court issued against AIL's tangible or intangible property in the district.

## POINT 2

### ASPEN IS NOT PRESENT IN EITHER THIS DISTRICT OR THE SOUTHERN DISTRICT OF TEXAS FOR PURPOSES OF RULE B

AIL's misreads the Court of Appeals' decision in Aqua Stoli Shipping Ltd. v. Gardner Smith Pty., Ltd., 460 F.3d 434 (2d Cir. 2006), to argue that its appointment of an agent in Texas can somehow defeat an attachment in this Court.[2] Although the Aqua Stoli decision grants a district court the discretion to vacate an attachment where "the plaintiff and defendant are both present in the same district and would be subject to jurisdiction there", 460 F.3d at 444-45, AIL is present in neither this district nor the Southern District of Texas for purposes of Rule B. The court can permit the attachment, in the sound exercise of its discretion, so long as PSL makes a prima facie showing that it is entitled to the attachment. Dolco Investments, 486 F. Supp. at 266-67.

"Presence" within the context of Rule B means that the defendant is not only subject to *in personam* jurisdiction in a district but also maintains a permanent presence there to support the conclusion that the defendant can be "found" within the district, such as through a managing agent or a registered agent for service of process. See, e.g., Yayasan Sabah Dua Shipping SDN BHD v. Scandanavian Liquid Carriers, Ltd., 335 F. Supp. 2d 441, 446 (S.D.N.Y. 2004) (holding that defendant was not present in this district where it had no offices, managing agent or registered agent with express authority to accept service of process here); Royal Swan Navigation Co., Ltd. v. Global Container Lines, 868 F. Supp. 599, 602-03 (S.D.N.Y. 1994) (concluding that a defendant could not

---

[2] AIL's argument that it is present in the same district as PSL would certainly undercut the claims AIL has made in the related case against EP-Team. If AIL and PSL are present in the same district, then EP-Team, which also has its principal place of business in Texas, should likewise be entitled to have AIL's Process of Maritime Attachment and Garnishment vacated.

4

be found within the district for purposes of Rule B where it had no individuals who were authorized to accept service of process in the district on a regular basis).

AIL conclusorily states that it is present in the Southern District of Texas solely by virtue of a December 18, 2007, Opinion and Order, finding that Aspen was present in Texas because it has an agent in that district through which it conducts business in the U.S. However, the Opinion completely fails to address more recent Southern District of New York case law on this issue, which requires that the so-called agent actually have some authority to accept service of process at the time the case is commenced in order to defeat the attachment. Yayasan Sabah, 335 F. Supp. 2d at 446; Royal Swan, 868 F. Supp. at 602.

In any event, where AIL's connection to Texas is so tenuous, this Court can properly exercise its discretion to permit the attachment to remain in place. AIL has no permanent presence in the United States except through counsel and an agent that happens to operate out of the state of Texas. PSL certainly has a need for the attachment in light of AIL's lack of presence in this country, and the serious doubts about AIL's ability to satisfy an arbitration award that PSL expects to obtain in its favor. Integrated Container Svc., Inc. v. Starlines Container Shipping, Ltd., 476 F. Supp. 119, 124 (S.D.N.Y. 1979). Moreover, AIL's own actions in this court are inconsistent with its position that it is present in the Southern District of Texas. AIL has filed its own Rule B action against PSL's parent, EP-Team, who is also located in Texas. AIL's filing would indicate that when it filed its complaint in October it did not consider itself present in the same jurisdiction as EP-Team. Now, however, when its own property is attached, it

5

suddenly considers itself to be present in a state where it has no offices, officers, employees or tangible assets.

## POINT 3

### PROSHIPLINE AS ASSIGNEE DOES NOT NEED EP-TEAM AS A CO-PLAINTIFF TO MAINTAIN ITS CLAIM

AIL improperly accuses PSL of perverting the intent of Rule B by not including EP-TEAM as a co-plaintiff in this action, or by not intervening in the action commenced by AIL. AIL overlooks that PSL may not have had a right to intervene in the action brought against EP-Team. Moreover, as EP-Team was already sued by AIL in this Court, EP-Team had no need to file as a plaintiff in a separate action. PSL made no attempts to mislead the Court, as it specifically requested that this action be a related case to the action brought by AIL, and included a statement of relatedness that set out that PSL was proceeding as assignee of EP-Team. AIL has pointedly refused to concede that it will deal with PSL, or that PSL has any rights to respond to AIL's claim against EP-Team, whether in arbitration or otherwise. Nevertheless, AIL now maintains that PSL should not be permitted to maintain its own case against AIL.

AIL's reliance on Judge Leisure's decision in <u>Chiquita Int'l, Ltd. v. MV Bosse</u>, 518 F. Supp. 2d 589 (S.D.N.Y. 2007), is clearly misplaced for two very important reasons. First, the vessel owner who obtained the attachment before Judge Wood was a defendant in the action previously filed by Chiquita. In this case, PSL was decidedly not a party to the action brought by AIL, because AIL has refused to deal with PSL directly. Second, the vessel owner failed to designate its later filed case as a related case to that file by Chiquita. In stark contrast, PSL marked its case a related case to that filed by

6

AIL, and even included its Statement of Relatedness, setting out how it was the assignee of EP-Team, who unlike PSL was a party to the other action.

Likewise, Judge Keenan's decisions in <u>Rapture Shipping Ltd. v. Allround Fuel Trading B.V.</u>, 2006 WL 2850206 and 2006 WL 2474869 (S.D.N.Y. 2006), are distinguishable where PSL, unlike the plaintiff in that case, has not filed duplicative complaints in this district. The plaintiff in that case had previously filed a complaint, to which the defendant had filed an answer. There was in effect privity of litigation between the parties in this district. In the present case, PSL did not become a party to an action in this district until it filed its own complaint on December 3, 2007. It is puzzling to say the least how a party new to the jurisdiction can be seen to have abused the attachment mechanism by virtue of a suit filed against another corporation. AIL certainly was aware of PSL's role in the Services Contract, as it had been dealing directly with PSL since 2006. It easily could have named PSL as a party defendant in the case it filed, especially where it was aware of the declaratory judgment complaint filed by EP-Team and PSL in Texas.

## POINT 4

### DAMAGES CLAIMED BY PROSHIPLINE ARE BASED IN FACT AND UPON REASONABLE ESTIMATES AND SHOULD NOT BE REDUCED OR VACATED

PSL's asserted damages are supported by facts and reasonable estimates, and under pertinent law should not be reduced. Moreover, PSL is not yet fully secured for its claims notwithstanding attachments in the Western District of Washington and in this district.

7

> Fed. R. Civ. P. Supplemental Admiralty and Maritime Rule E(6) states:
>
> Reduction or Impairment of Security. Whenever security is taken the court may, on motion and hearing, for good cause shown, reduce the amount of security given and if the surety shall be or become insufficient, new or additional surety may be required on motion and hearing.

However, "It is well-settled that in an attachment proceeding, the plaintiff need not prove its damages with exactitude." Dongbu Exp. Co., Ltd. v. Navios Corp., 944 F. Supp. 235, 237 (S.D.N.Y. 1996) (citing Bergesen v. Lindholm, 760 F. Supp. 976, 986 (D. Conn.1991)). "In addition, the court must be satisfied that the plaintiff's claims are not frivolous." Id. (citing Royal Swan Navigation Co., Ltd. v. Global Container Lines, Ltd., 868 F. Supp. 599 (S.D.N.Y.1994); Rolls Royce Industrial Power v. M.V. Fratzis M., 1995 WL 846690, at *3 (S.D.N.Y. July 24, 1995)).

Of note, the court in Dongbu found, among other things, that the plaintiff's claim of $200,000 in anticipated legal fees in London arbitration and 9.5% interest for two years, allowing time for appeal, was reasonable. 944 F. Supp. at 238, n.5. See, also, Daeshin Shipping Co. Ltd. v. Meridian Bulk Carriers, Ltd., 2005 WL 2446236 (S.D.N.Y. 2005) (upholding attachment including estimate of $300,000 for fees in arbitration proceeding and 5% interest per year allowing three years to conclude the arbitration).

Courts in this district have upheld numerous attachments claiming anticipated lost profits based upon reasonable estimates presented either in the complaint or at the time of the Rule E vacatur hearing. For example, in Daeshin Shipping, the plaintiff claimed lost profits for breach of charter based upon the difference between the charter party daily hire rate and the lower prevailing market rate at the time of the legal action. While there was some dispute by the defendant as to the plaintiff's evidence of the market rate, the court found that plaintiff's figure was a reasonable, though not an exact, calculation

which supported the attachment in the early stages of legal proceedings. 2005 WL 2446236 at *2. In <u>The Rice Co. v. Express Sea Transport Corp.</u>, 2007 WL 4142774, *3 (S.D.N.Y. 2007), the court, applying Rule E(6), upheld the attachment based upon plaintiff's calculation of the market rate at the alleged time of the breach of contract, and found that while the defendant offered some evidence of a different market rate, such a factual dispute prevented the court from reducing security at that time.

As to what constitutes "good cause" under Rule E(6), the court in <u>Sea Transport Contractors Ltd. v. Industries Chemiques du Senegal</u>, 411 F. Supp. 2d 386 (S.D.N.Y.2006), reduced the attachment where it found that the damages alleged in the complaint did not reflect the figures in the underlying contract. In <u>Transportes Navieros y Terrestes, S.A. de D.V. v. Fairmount Heavy Transport N.V.</u>, 2007 WL 1989309, *5 (S.D.N.Y. 2007), the court mentioned an obvious failure of the plaintiff to mitigate its damages as another possible "good cause" and a valid reason for reducing security. Nevertheless, the burden on the plaintiff is minimal at this stage and unless plaintiff's claim is frivolous, where it offers no evidence to support its damages, where it is undisputed that plaintiff did not mitigate its damages or where the claim or the amount is clearly inconsistent with the contract or evidence relied upon, the attachment should be upheld. <u>Transportes Navieros</u>, 2007 WL 1989309 at *5 (citing <u>Daeshin Shipping</u>, 2005 WL 2446236; <u>Dongbu Express</u>, 944 F. Supp. at 237; <u>Sea Transport Contractors</u>, 411 F. Supp. 2d 386).

In support of its calculation of the principal amount of damages PSL submits in conjunction with this memorandum the Declaration of Neil Johnson, a principal of PSL, which sets forth the basis for plaintiff's claim. Mr. Johnson's declaration explains that at

9

the time of AIL's repudiation of the Agreement, AIL had seven vessels on time charter. Based upon the average number of US port calls per vessel per year, the duration of each charter remaining at the time of the repudiation and the expected remaining number of US port calls per vessel, and the average fee/revenue earned by PSL in connection with each port call, PSL has calculated its anticipated lost profit as $5,889,930.00.

While AIL may protest to the Court that this amount is incorrect, PSL maintains that this amount is correct and is <u>prima facie</u> supported by the statements of Neil Johnson in his declaration and the underlying facts and estimates contained therein. PSL further submits that at this stage of proceedings, in view of Rule E(6) and the abovementioned cases, reduction of security is not warranted.

Likewise, in support of plaintiff's claim for anticipated legal fees, costs and interest in connection with the arbitration to take place in Singapore before the Singapore International Arbitration Centre ("SIAC") PSL submits the declaration of Michael Polonsky, London counsel for PSL, and counsel in connection with the SIAC arbitration and resolution of the dispute with Aspen. As per Mr. Polonsky's declaration, legal fees incurred to date total £75,000 and he anticipates the following additional charges to PSL: additional legal fees £393,580, expert's fees £50,000, arbitration costs £20,000, arbitrators' fees £130,000, and disbursements £15,000. Altogether, the incurred and anticipated costs are presently £608,580. Mr. Polonsky's estimates are detailed, itemized, and manifestly reasonable in light of prevailing rates for legal services, the expected duration of arbitration proceedings, and in the experience of plaintiff's undersigned New York counsel. The amount stated in PSL's complaint, which is far less than Mr. Polonsky's estimate, is amply supported.

The current amount which plaintiff has attached as security in various jurisdictions is presently estimated at $3,030,104.79.[3] As this falls short of the amount in plaintiff's prayer for relief and as established by the Declarations of Neil Johnson and Michael Polonsky, the damages amount set forth in the Court's Order granting attachment should not be reduced.

## POINT 5

### AIL IS NOT ENTITLED TO COUNTERSECURITY FROM PSL WHERE IT STEADFASTLY MAINTAINS THAT IT HAS NO DISPUTE WITH PROSHIPLINE

Although Rule E permits a party to seek countersecurity on a counterclaim, AIL has asserted no counterclaim against PSL in this or any other proceeding. To the contrary, AIL maintains that it is not in privity with PSL because PSL did not assume any rights or obligations under the Services Contract from EP-Team. In light of this position, it is difficult to fathom how AIL can have a counterclaim for breach of contract against PSL. As AIL has elected to file solely against EP-Team in this district, despite actual knowledge of PSL's claim against AIL, it cannot now pretend that its pleading asserts claims against a party other than who it named a defendant. The application for countersecurity should be denied.

---

[3] In the Western District of Washington: $532,539.00 bond for release of bunkers on the M/V Margaretha Green, $93,000 value of property removed from the M/V Beluga Fusion, $51,455.24 bond for the release of the M/V Beluga Fusion. In the Southern District of New York: $1,999,964.00 in the hands of garnishee Citibank, $353,146.55 in the hands of garnishee US Bank.

## **CONCLUSION**

For the foregoing reasons, AIL's motion should be denied in all respects and the Order for Process of Maritime Attachment and Garnishment should stand in favor of PSL.

                              Respectfully submitted,

                              HILL RIVKINS & HAYDEN LLP
                              Attorneys for Plaintiff ProShipLine, Inc.

By:   */s/ John J. Sullivan*
        John J. Sullivan (JS-1037)
        Christopher M. Panagos (CP-2199)
        45 Broadway, Suite 1500
        New York, New York 10006
        Tel: 212-669-0600
        Fax: 212-669-0699