HILL RIVKINS & HAYDEN LLP
45 Broadway, Suite 1500
New York, New York 10006
Tel: (212) 669-0600
Fax: (212) 669-0699

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PROSHIPLINE, INC.,<br><br>    Plaintiff,<br><br>vs.<br><br>ASPEN INFRASTRUCTURES, LTD.<br>f/k/a SUZLON INFRASTRUCTURE, LTD.,<br><br>    Defendant. | Index No.: 07-CV-10969<br><br>**DECLARATION OF MICHAEL SAMUEL POLONSKY PURSUANT TO 28 U.S.C.. §1746** |

Michael Samuel Polonsky, declares under penalty of perjury under the laws of the United States of America that the following is true and correct.

  1.  I am a partner in the law firm of Berwin Leighton Paisner LLP, solicitors for ProShipLine, Inc., ("PSL") as well as its associated company, EP-Team, Inc. ("EP-Team"). My firm is representing EP-Team (and endeavoured to join PSL into) arbitration proceedings in Singapore brought by Aspen Infrastructures, Ltd. ("AIL) against EP-Team. I submit this declaration in opposition to the motion of AIL in New York to vacate the maritime attachments against AIL, and/or to reduce the amount of attachment, and/or for countersecurity. I am fully familiar with the nature of the Singapore arbitration and in particular the proceedings in connection with this dispute.

  2.  AIL has asserted various inconsistent positions in connection with the arbitration of the underlying dispute in this matter. It has denied that it has any obligation to arbitrate with PSL, or that PSL ever became a party to the Sales and Logistics Services Agreement originally entered into by EP-Team by which various agency services were provided to AIL in connection with vessels that AIL had under time charter. AIL instead suggested that PSL commence an arbitration proceeding against AIL separate from the one commenced by AIL against EP-Team,

but with the same arbitration tribunal constituted to hear AIL's claim. See the telefax from AIL's solicitors to the Singapore arbitration panel dated 4 December 2007, attached hereto as Exhibit 1.

    3. When my partner Carol Mulcahy tried to confirm with AIL's solicitors that AIL was proposing an ad hoc arbitration agreement, they denied there was any arbitration agreement but nevertheless repeated that PSL should appoint the same arbitration tribunal to hear PSL's claims. See the e-mail from AIL's solicitors to my office dated 7 December 2007, attached hereto as Exhibit 2. However AIL's solicitors made clear that they will challenge the jurisdiction of such arbitration tribunal to hear PSL's claim against it.

    4. PSL is nevertheless prepared to submit the threshold issue of arbitrability of its claims against AIL to the U.S. courts for a determination of whether AIL is obligated to arbitrate. The course to which AIL has attempted to direct PSL, however, would have PSL commence an arbitration proceeding, upon which AIL would challenge the jurisdiction of the arbitration tribunal to hear the dispute. PSL considers it a tremendous waste of resources, both judicial and arbitration, to commence a proceeding at AIL's suggestion only to have AIL contest the jurisdiction of that proceeding.

    5. In the event that PSL's claim proceeds to arbitration in Singapore, I have performed an estimate of the legal and arbitration expenses that PSL can expect to incur. My calculation of that estimate is set out in an "Estimate of Costs" attached hereto as exhibit 3. My calculation, which I incorporate into this declaration, demonstrates that PSL expects to incur legal expenses of approximately £478,580 and arbitration expenses of approximately £130,000. As such costs are almost without exception awarded to the prevailing party in Singapore arbitration, PSL can expect to be awarded a sum in excess of £600,000, or over US$1.2 million, beyond the principal amount of its claim.

I declare under penalty of perjury under the laws of the United States that the foregoing is true to the best of my knowledge.

Dated: 15 January 2008

                                              Michael Samuel Polonsky

## JOSEPH TAN JUDE BENNY
ADVOCATES & SOLICITORS

No. 5 Shenton Way
#35-01 UIC Building
Singapore 068808
Tel: (65) 6220 9388
Fax (65) 6225 7827



## FAX TRANSMISSION

| | | | |
|---|---|---|---|
| Date | : 4 December 2007 | Your Ref | : Please Advise |
| No. of Pages (including this sheet) | : 5 | Our Ref | : 2007178719JB/MK/mm |
| To | : 1. Mr. Madan Assomull<br>2. Mr. Sundaresh Menon<br>3. Mr. Vinyak Pradhan | | |
| Attention | : -- | | |
| Fax No | : 1. 6339 5544<br>2. 6538 8598<br>3. (by email – vp@skrine.com) | | |
| From | : K. Murali Pany / Kenneth Ho | | |
| Re | : SIAC ARBITRATION NUMBER 063 OF 2007 (ARB063/07)<br>IN THE MATTER OF AN ARBITRATION UNDER THE INTERNATIONAL ARBITRATION ACT BETWEEN ASPEN INFRASTRUCTURES LTD, (formerly known as Suzlon Infrastructure Ltd) (Claimants), AND EP-TEAM, INC. (Respondents) | | |

This fax and the information it contains, which may be privileged and/or confidential, is for the use of the addressee(s) only. The unauthorised use, disclosure or copying of this fax or such information is strictly prohibited. If you are not the addressee and are in possession of this fax (or any copy) without consent of any addressee, please notify us immediately by telephone (65) 6220 9388 and return this fax and any copies to us as soon as possible.

Dear Sirs,

Further to our e-mail to Mr Pradhan yesterday, we reply to the letter dated 30th November 2007 from M/s Berwin Leighton Paisner LLP. We also acknowledge receipt of a copy of their letter to the Tribunal dated yesterday, received overnight, setting out some details regarding the alleged claim of ProShipLine which is taken into account in this response.

Preliminary Issues

The Agreement in question was made on or about 9th April 2006 between Suzlon Infrastructure Ltd (SIL) and EP-Team Inc [see; Claimant's Bundle of Documents at S/no. A(1)].

Under this Agreement, EP-Team was appointed the general sales and port services agent of SIL in the USA. EP-Team was to, inter alia, establish a sales and

EXHIBIT
1 - Polonsky

management operation to secure and collect freight and other associated revenue for the Claimant's vessels for voyages to and from the USA.

The Claimant therefore reiterates its position that EP-Team is the counterparty to the Agreement and the proper party to this arbitration. The Claimant does not agree to the substitution of ProShipLine for EP-Team as the Respondent or to ProShipLine being joined as a second Respondent to these proceedings.

The Claimant's position is that if ProShipLine maintains that it has a contractual claim against the Claimant, then the proper thing to do is for ProShipLine to commence (separate) arbitration proceedings against the Claimant.

The Claimant is not aware of and denies that there was any and/or any valid assignment of the Agreement by EP-Team to ProShipLine. Under English law it is fundamental that everyone has the right to choose the identity of the person with whom he wants to contract. This means that the consent of the Claimant would have been required for the release of EP-Team: **see Chitty on Contracts (29th Ed. ) at 19-076**:

> *"Everybody has a right to choose with whom he will contract and no-one is obliged without his consent to accept the liability of a person other than him with whom he made his contract. Consequently, the burden of a contract cannot in principle be transferred without the consent of the other party, so as to discharge the original contractor."*

The Respondent has raised a letter dated 25th April 2006. The Claimant cannot trace ever having received that letter. In any event, since ProShipLine only came into existence on 3rd May 2006 the letter could not constitute an assignment. At best the letter could be said to give notice of an intention to assign in the future, i.e. notice that in the future EP-Team intended to assign the Agreement to ProShipLine if and when ProShipLine was incorporated. This would clearly not constitute an "absolute assignment" by EP-Team to ProShipLine for the purposes of s.136 of the Law of Property Act 1925 **(see Chitty on Contracts, para 19-006)** or even an equitable assignment.

Berwin Leighton Paisner LLP purport to rely upon the principle of "Conditional benefits" **(see Chitty on Contracts, para 19-078)**. The full explanation of this principle as explained in **Tito v Waddell (at 290)** is as follows:

(a) CONDITIONAL BENEFITS AND INDEPENDENT OBLIGATIONS. One of the most important distinctions is between what for brevity may be called conditional benefits, on the one hand, and on the other hand independent obligations. An instrument may be framed so that it confers only a conditional or qualified right, the condition or qualification being that certain restrictions shall be observed or certain burdens assumed, such as an obligation to make certain payments. Such restrictions or qualifications are an intrinsic part of the right: you take the right as it stands, and you cannot pick out the good and reject the bad. In such cases it is not only the guarantee who is bound by the burden: his successors in title are unable to take the right without also assuming the burden. The benefit and burden have been annexed to each other ab initio, and so the benefit is only a conditional benefit. In the other class of case the right and the burden, although arising under the same instrument,

Joseph Tan Jude Benny

5 Shenton way #35-01 UIC Building Singapore 068808 Tel (65) 6220 9388 Fax (65) 6225 7827
Email jtjbs@singnet.com.sg Web site www.jtjb.com.sg
After Hours: (65) 9759 3656

SINGAPORE • PIRAEUS • BANGKOK • KUALA LUMPUR • TAIPEI • JAKARTA

M/s Joseph Tan Jude Benny  Page 3
3 December 2007

---

> are independent of each other. X grants a right to Y and by the same instrument Y independently covenants with X to do some act. In such cases, although Y is of course bound by his covenant, questions may arise whether successors in title to Y's right can take it free from the obligations of Y's covenant, or whether they are bound by them under what for want of a better name I shall call the pure principle of benefit and burden."

Accordingly, where A contracts with B who assigns to C, C's claim against A will be subject to the contractual terms as between A and B. However, A (SIL) will still have a claim against B (EP-Team) under the terms of the original contract. Thus the conditional benefits principle applies where the assignee (ProShipLine) sues the original contracting party A (SIL). It is irrelevant and has no application in the present circumstances where one original contracting party, A (SIL), is suing the other original contracting party, B (EP-Team), in respect of a liability imposed under the Agreement. (Otherwise this would be wholly inconsistent with the overriding principle that in the absence of a consensual novation or substitution, no contracting party is obliged without his consent to accept the liability of a person other than the party with whom he contracted- see above.)

In fact, the documents already before the Tribunal, for example Addendum No. 2 prepared by EP-Team and dated 10th November 2006 – **see; Claimants Bundle of Documents S/no. A(4)** - clearly show that no assignment ever took place.

ProShipLine is at best the agent or subcontractor appointed by EP-Team and EP-Team at all times was liable for its obligations under the Agreement, including the liability to account for freight received whether by ProShipLine or otherwise. This does not, however, preclude any separate cause of action the Claimant may have against ProShipLine.

The Claimant does not see any basis for any claim and/or counterclaim by EP-Team and/or ProShipLine. Despite now claiming that the Agreement was assigned to it, ProShipLine has to date not brought any arbitration proceedings against the Claimant in respect of its alleged claim.

The Respondent and ProShipLine have nevertheless recently commenced proceedings in Washington whereby it has sought to garnish and attach assets belonging to the Claimant including bunkers. In these proceedings, a claim for damages in the sum of USD4.9 million has been mentioned but without any particularization whatsoever. We note that in their letter yesterday, Berwin Leighton Paisner LLP assert that ProShipLine have a claim against the Claimant amounting to USD5.75 million said to arise out of the termination of the contract. However, the basis for that claim is still not understood given the circumstances of the termination.

Save as aforesaid, the Claimant does not think it is useful at this point to advance submissions on law and the evidence and will do so at the appropriate juncture when the necessary applications are taken out.

Joseph Tan Jude Benny

5 Shenton Way #35-01 UIC Building Singapore 068808 Tel (65) 6220 9388 Fax (65) 6225 7827
Email jtjb@singnet.com.sg Web site www.jtjb.com.sg
After Hours: (65) 9759 3856

SINGAPORE • PIRAEUS • BANGKOK • KUALA LUMPUR • TAIPEI • JAKARTA

M/s Joseph Tan Jude Benny  Page 4
3 December 2007

### General Directions

The Claimant does not agree to the adoption of the SIAC Rules and would prefer the proceedings to be ad-hoc in accordance with the agreement to arbitrate.

We ask that directions be given in respect of: -

(a) The Respondent's application to dispute the jurisdiction of the Tribunal;

(b) The Respondent's application for the determination, as preliminary issue, of the question of whether it can be liable for freight charges; and

(c) The Claimants' application against the Respondent in respect of the monies belonging to the Claimant that are currently being wrongfully withheld (our fax dated 30 November 2007 refers).

We do not agree that ProShipLine should be joined as a party to the existing arbitration and it is the Claimant's position that ProShipLine does not and cannot have any claim against the Claimant. If, however ProShipLine nevertheless wishes to maintain its claim against the Claimant then the Claimant would consent to the commencement of a separate arbitration, subject to the provision by ProShipLine of satisfactory security for costs, with the same Tribunal to be appointed and to be heard concurrently with this arbitration. This would avoid the risk of unnecessary delay in the alternatives proposed by Berwin Leighton Paisner LLP.

If this proposal is adopted then AIL, who would be respondents in that arbitration, will (following the resolution of any issue concerning security for costs) apply to dispute the jurisdiction of the Tribunal on the basis that ProShipLine are not a party to the Agreement.

We would also ask that all these applications be heard together. The Claimant's application carries some urgency.

The monies (freights belonging to AIL) are being held in an account in the Bank of America and the Claimant had requested that these monies be remitted to it as long ago as 3rd August 2007 [see; **Claimant's Bundle of Documents at S/nos. B(1) and C(1)**].

To date, these monies have not been remitted. The Claimant is also unaware of the actual amount of these monies as no bank statements have been provided by the Respondent.

The Claimant's operations have been affected by the retention of these monies and the Respondent's further conduct in the USA including the garnishment and attachment of assets in Washington on the basis of the assertion of a claim under the Agreement said to amount to USD4.9 million (or USD5.75 million) and said to be subject to arbitration in accordance with the terms of the Agreement.

To simplify the issues concerning the money held in the Bank of America account, the Claimant invites the Respondent to confirm that it is agreed that the monies in the said

Joseph Tan Jude Benny

5 Shenton Way #35-01 UIC Building Singapore 068808 Tel (65) 6220 9388 Fax (65) 6225 7827
Email jtjb@singnet.com.sg Web site www.jtjb.com.sg
After Hours: (65) 9759 3856

SINGAPORE • PIRAEUS • BANGKOK • KUALA LUMPUR • TAIPEI • JAKARTA

M/s Joseph Tan Jude Benny                                                   Page 5
3 December 2007

account belong to the Claimant and the amount thereof, providing bank statements from 30th June 2007 to date.

In light of the indicated dispute as to jurisdiction by the Respondent, the Claimant believes that it may not be appropriate for directions to be given regarding the service of the Claim Submissions. However, the Claimant is prepared to provide any further details or serve its Points of Claim as required by the Tribunal.

Yours faithfully

**K. Murali Pany / Kenneth Ho**
Writers' DID : 6224 3645 / 6220 9388
Writers' E-mail : murali@jtjb.com / kennethho@jtjb.com

cc :   M/s Berwin Leighton Paisner LLP (London)
       Attn : Mr. Michael Polonsky
       Ref No. : MSP/PSUP/25880.1
       By Fax 001 4420 7760 1111 Only



Joseph Tan Jude Benny

5 Shenton way #35-01 JIC Building Singapore 068808 Tel (65) 6220 9388 Fax (65) 6225 7827
Email jtjbs@singnet.com.sg Web site www.jtjb.com.sg
After Hours: (65) 9759 3555

SINGAPORE • PIRAEUS • BANGKOK • KUALA LUMPUR • TAIPE • JAKARTA

RE: Arbitration: AIL v EP-Team

**Carol Mulcahy**

Subject: FW: Arbitration: AIL v EP-Team

**From:** Murali Pany [mailto:murali@jtjb.com]
**Sent:** 07 December 2007 03:53
**To:** Carol Mulcahy; 'Vinayak P. Pradhan'; smenon@rajahtann.com; bay@assomull.com.sg
**Cc:** kennethho@jtjb.com; law@chauncy.co.uk; Nicole Mak; Michael Polonsky
**Subject:** RE: Arbitration: AIL v EP-Team

Dear Sirs,

With the greatest respect, we do not feel that BLP's emails of 5 and 6 December 2007 are helping to move matters forward.

The matters that need to be decided now to enable progress in this matter are:

a) AIL to serve its Points of Claim
b) The appointment of the Tribunal in response to a Notice of Arbitration from PSL
c) PSL to issue a Notice of Arbitration
d) AIL to confirm its position in respect of the PSL proceedings
e) PSL to serve its Points of Claim
f) EP-Team to confirm whether it will be challenging the jurisdiction of the Tribunal in the current arbitration.

**With regard to (a), AIL has already confirmed that it will serve its Points of Claim on 19 December 2007.**

**With regard to (b), AIL has already confirmed that it will agree to the appointment of the current Tribunal in response to the PSL Notice of Arbitration.** For the avoidance of any doubt, AIL does not agree that there is an ad-hoc agreement to arbitrate between the AIL and PSL. The Claimant's agreement (set out in our email dated 5 December 2007) was confined to appointing the same Tribunal (in the same seat and under the UNCITRAL Rules) in response to a Notice to Arbitrate from PSL, and not insisting on security as a condition for this agreement.

**With regard to (c), we reiterate that AIL is willing to waive formalities regarding the PSL Notice as stated in our email dated 6 December 2007.** We note that notwithstanding AIL's willingness to waive formalities, BLP still wishes to serve a Notice of Arbitration. We confirm that we have instructions to accept service. We note BLP mentions that this will be done in "a few days". **We ask BLP to confirm when exactly this will be done.**

With regard to (d), we think that AIL's position on the "challenge to jurisdiction" is clear. As set out in our fax dated 4 December 2007, AIL's position is, and has always been, that the Agreement was not made with PSL nor was it assigned or validly assigned to PSL by EP-Team. Accordingly AIL had no contract with PSL. The claim made by PSL is for breach of contract and must therefore fail. This is effectively the same approach being taken by EP-Team (the fax dated 30 November 2007 from BLP refers, at page 3 paragraph 2). We accept that the arbitrators should decide this dispute and rule on all issues including their own jurisdiction in both AIL's and PSL's proceedings. We trust this answers BLP's question in this regard.

**With regard to (e), PSL has yet to confirm when PSL will serve its Points of Claim. AIL says that PSL's Points of Claim should also be served on 19 December 2007.** This will enable both sets of proceedings (and any jurisdictional challenges) to proceed concurrently.

We do not believe that there should be any 'hold up' on the part of PSL in initiating arbitration proceedings. If PSL truly believes that it has a claim under the contract of 9th April 2006 and that claim is for USD 4.9 or USD 5.75 million then we cannot see any grounds for delay in proceeding with that claim.

07/12/2007


EXHIBIT
2 Polonsky

We draw attention to the following. The attachment proceedings brought by EP-Team and PSL in Tacoma Washington include a request "That Defendant Aspen be ordered to proceed to arbitration in accordance with the Contract". The Court in Houston Texas has ruled on AIL's Motion to stay the proceedings commenced by EP-Team and ProShipLine and has ordered that the case "shall be administratively closed..." with the parties granted leave to "reinstate the case at the conclusion of the arbitration proceedings".

With regard to (f), in BLP's letters dated 15 November 2007, 19 November 2007 and 30 November 2007, EP-Team's and PSL's unequivocal position was that the Agreement was assigned to PSL and accordingly PSL is the proper Respondent in the current arbitration. In the said letters dated 15 November 2007 and 30 November 2007, it was also stated that EP-Team "will" dispute the jurisdiction of the Tribunal in the event AIL did not consent to the substitution or joinder of PSL in the current proceedings.

However, Mr Polonsky indicated during the Preliminary Meeting that EP-Team is not in a position to make a final decision in relation to a challenge to jurisdiction until such time as it has had an opportunity to consider the nature of the claims formulated in the Points of Claim. AIL is unable to see how the nature of its claims to be advanced can in any way affect the said position. Further, EP-Team is already aware of the nature of AIL's claims (the fax dated 30 November 2007 from BLP refers, where it was also unequivocally stated that PSL is "the proper Respondent" to these claims).

Be that as it may, it now seems that a jurisdictional challenge by EP-Team is only a possibility. Therefore, **we are proposing that the matter be reviewed immediately after the service of Points of Claim by AIL and PSL on 19 December 2007 and appropriate directions including regarding the respective jurisdictional challenges, if any, and AIL's application (regarding the monies in the Bank Account) be given at that time.**

As can be seen from the abovesaid, AIL has done its part and progress is dependant entirely on confirmations from EP-Team and PSL. We ask that BLP provide these confirmations immediately so that the matter can move forward expeditiously. The assistance of the Tribunal would be greatly appreciated.

Regards,

*K. Murali Pany*

**Partner**
**M/s JOSEPH TAN JUDE BENNY**
Advocates & Solicitors
5 Shenton Way
#35-01 UIC Building
Singapore 068808

Tel: 65-6220 9388
Fax. 65-6225 7827

**JTJB Global Network**
Singapore * Piraeus * Bangkok * Kuala Lumpur * Taipei * Jakarta * Los Angeles

Visit our website at www.jtjb.com

Supporting www.singaporelaw.sg

Confidentiality Notice: This message is meant for the addressee only. It may contain material that attracts legal privilege. If you receive this message in error please delete the same immediately.

07/12/2007

07/12/2007

# ESTIMATE OF COSTS AS AT 15 JANUARY 2008

**IN A POSSIBLE ARBITRATION**

**B E T W E E N:**

PROSHIPLINE, INC

<u>**Possible Claimant**</u>

-and-

ASPEN INFRASTRUCTURES LTD

<u>**Possible Respondent**</u>

This estimate is prepared on the basis (which is disputed) that there is a valid and binding arbitration agreement between ProShipLine, Inc and Aspen Infrastructures Ltd and that in such circumstances, court proceedings by ProShipLine, Inc against Aspen Infrastructures Ltd seeking compensation for breach of contract should be stayed and referred to arbitration in Singapore by the Tribunal presently hearing the claims by Aspen Infrastructures Ltd against EP-Team, Inc

A   **Costs incurred to date**

| | |
|---|---:|
| Billed | £41,000 |
| Unbilled | £34,000 |
| **Total (Part A)** | **£75,000** |

B   **Forecast of costs in the possible arbitration down to conclusion of hearing**

| Description | | | Total |
|---|---|---|---|
| 1. <u>Preparation of Request for Arbitration and Statement of Claim</u> | | | |
| Partner | 30 hours | £10,800 | |
| Partner/senior Associate | 12 hours | £3,800 | |
| <u>Subtotal</u> | | | £14,600 |

2.   <u>Other pleadings (considering Statement of Defence, preparing Statement of Reply, participating in directions hearing before arbitration panel)</u>

Exhibit 3 - Polonsky

|   | Senior Associate | 2 hours | £640 |   |
|---|---|---|---|---|
|   | Sub-total |   |   | £1,360 |

5. <u>Witness statements</u>

5.1 Preparing witness statements of factual witnesses by reference to disclosed documents, and reviewing with clients

| Partner | 40 hours | £14,400 |
|---|---|---|
| Partner | 40 hours | £14,400 |

Sub-total £28,800

5.2 Reviewing witness statement of Respondent's witnesses of fact & consideration of any factual areas that need to be further investigated.

| Partner | 10 hours | £3,600 |
|---|---|---|
| Senior associate | 20 hours | £6,800 |

Sub-total £10,400

5.3 Preparing rebuttal witness statements

| Partner | 10 hours | £3,600 |
|---|---|---|
| Senior Associate | 20 hours | £6,400 |

Sub-total £10,000

6. <u>Experts reports</u>

6.1 <u>Shipping and logistics expert</u>

Instructing liability and damages experts, and work associated with preparation of expert reports.

| Partner | 20 hours | £3,600 |
|---|---|---|
| Senior associate | 40 hours | £6,400 |

Sub-total £10,000

6.2 Considering expert evidence served by Respondent, reviewing same with clients and identifying issues arising in order to seek further input from Claimants' experts, arranging preparation of supplemental reports and reviewing with clients prior to service.

| Partner | 10 hours | £3,600 |

|  |  |  |
|---|---|---|
| Senior Associate | 15 hours | £4,800 |

Sub-total      £8,400

6.4    Arranging meetings of experts of like discipline, and Considering conclusions reached and any agreed issues

| Partner | 2 hours | £720 |
|---|---|---|
| PartnerSenior Associate | 2 hours | £640 |

Sub-total      £1,360

7. Preparations for hearing

7.1    Preparation for an agreed chronology of events and set of agreed bundle for use at the hearing.

| Partner | 2 hours | £720 |
|---|---|---|
| Senior Associate | 10 hours | £3,200 |

Sub-total      £3,920

7.2    Preparation of written submissions for the arbitrators.

| Partner | 40 hours | £14,400 |
|---|---|---|
| Partner/senior Associate | 15 hours | £4,800 |

Sub-total      £19,200

7.3    Trial Preparation (including consideration of documents and preparation for examination of witnesses and legal research)

| Partner | 120 hours | £43,200 |
|---|---|---|
| Partner | 20 hours | £7,200 |
| Senior Associate | 20 hours | £6,400 |

Sub-total      £56,800

7.4    Attendance at hearing[1]
(estimated hearing length 10 days)

| Partner | 80 hours | £28,800 |
|---|---|---|
| Senior Associate | 80 hours | £25,600 |

---

[1] This figure assumes an 8 hour working day which will include pre and post Hearing conferences.

|  | Sub-total |  | £54,400 |

8. Additional

8.1 General conduct of the arbitration[2]

| Partner | 20 hours | £7,200 |
| Senior Associate | 20 hours | £6,400 |

|  | Sub-total |  | £13,600 |

**Total Part B**  **£318,580**

**Total (Parts A and B)**  **£393,580**

C  **Additional liabilities and costs**

9   Experts' fees payable to a shipping and logistics expert and a forensic accountant

Until such time as the experts have been identified it is difficult to provide an indication of likely costs involved. On the basis of current information, however, it is unlikely that total fees for such experts would be less than £50,000.

10   Expenses associated with the arbitration

These items comprise the Claimants' share of room hire for the arbitration hearing in Singapore, the cost of transcripts of the hearing, and the photocopying of documents and production of bundles for use by the arbitrators. On the basis of current information, it is unlikely that these expenses would be less than £20,000.

11   Fees of the arbitrators

There are 3 arbitrators in the pending proceedings between Aspen Infrastructures Ltd and EP-Team, Inc. They have indicated that they will each charge at the rate of S$1,000 per hour for the time they are involved. It is assumed that similar rates will apply in any arbitration between ProShipLine, Inc and Aspen Infrastructures Ltd. A reasonable estimate is that each will be involved in approximately 120 hours of work (10 hours for preparing for and participating in interlocutory applications,10 hours in reading papers in preparation for the substantive hearing, 70 hours for hearings , 10 hours for conferring post-hearing and

---

[2] This section deals with general correspondence with the Respondent's solicitors, third parties, the arbitrators, reporting to the clients, general preparation and routine applications and unanticipated contingencies. This could obviously be increased with the need for further detailed correspondence or applications on specific points that may arise.

       writing and agreeing the Award, 20 hours for contingencies), at a total charge of S$360,000 (equivalent more or less to £130,000).

12     Disbursements

These items comprise the costs associated with travelling to Singapore for the hearing and accommodation there during the hearing. A reasonable estimate of the likely cost of accommodation is £7,000 and for business class air-fares for 2 London-Singapore return is £8,000. The total estimate for these disbursements is £15,000. This assumes that no accommodation or flight costs are incurred in respect of the arbitrators. One of the arbitrators lives in Malaysia and will incur travel and accommodation costs in participating in a hearing in Singapore.

| | |
|---|---|
| **Total (Parts A, B and C excluding the arbitrators' fees)** | **£478,580** |
| **Total estimated arbitrators' fees** | **£130,000** |
| **GRAND TOTAL** | **£608,580** |