UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PROSHIPLINE INC.,

                            Plaintiff,

              - against -                     07 Civ. 10969 (RWS)

ASPEN INFRASTRUCTURES LTD., f/k/a
SUZLON INFRASTRUCTURE LTD.,

                            Defendant.
------------------------------------------------------------X


# MEMORANDUM OF LAW
# IN REPLY TO PROSHIPLINE'S
# OPPOSITION TO APPLICATION


**DEORCHIS & PARTNERS, LLP**
61 Broadway, 26th Floor
New York, New York 10006-2802
(212) 344-4700

*Attorneys for Defendant*
**ASPEN INFRASTRUCTURES LTD.**


John A. Orzel
*-of Counsel-*

## INTRODUCTION

Defendant Aspen Infrastructures Ltd., (hereinafter "Aspen") herewith replies to the opposition by plaintiff ProShipLine, Inc., to Aspen's application to vacate the Process of Maritime Attachment and Garnishment issued by this Court at the request of ProShipLine on December 3, 2007. To date garnishee banks have restrained US$2,353,110.50 in funds pursuant to the Court's Order.

## THE DECLARATION OF NEIL JOHNSON IS INADEQUATE TO ESTABLISH DAMAGES

ProShipLine proffers a declaration from Neil Johnson, a self-described "principal" of ProShipLine to establish the quantum of ProShipLine's damages. This declaration does not meet even the minimal standards required within the context of a Rule B attachment. None of the figures are supported:

(1) ProShipLine's calculations fail to acknowledge that there is no guarantee, obligation or commitment in the Agreement that Aspen will provide vessels.

(2) There is no basis for ProShipLine's claim that it was expected to earn US$90,000.00 in "revenue" for each port call under the Sales and Logistics Services Agreement (hereinafter "Agreement").

(3) The declaration does not make any suggestion to the effect that ProShipLine has in fact been, or will be, unable to arrange the shipment of a single item of freight that would have been shipped under the Agreement, or received any lower commission than it would have done under the Agreement.

There is no prohibition under the Agreement that prevents Aspen from sub-chartering its vessels to a third party. That third party would not be obligated to use ProShipLine's services in

1

the U.S. Frankly, that is what started the whole problem presently before this Court, as well as the Southern District of Texas, the Western District of Washington and the arbitration tribunal in Singapore: it was planned that SE Shipping[1], a third party which did not intend to use ProShipLine, would take over the ships as disponent owner.

The documents that are before the Court clearly show the "revenue" that ProShipLine has earned in the past for commissions on port calls by Aspen controlled vessels. Exhibit K to the Declaration of Sanjeev Bangad consists of the actual invoices that ProShipLine had billed to Aspen for its "agency fee" for each vessel. Based upon our understanding, there appear to be 15 voyages over the period of April, 2006 to July, 2007. During that period the invoices appear to show a total payment to ProShipLine of US$649,946.51. This works out to be an average of US$43,329.77 per voyage, not the US$90,000.00 that ProShipLine claims.

ProShipLine's calculations are meaningless, no matter how inaccurate. ProShipLine's calculations fail to take into consideration any expenses or overhead that ProShipLine would have to incur in order to earn its commission and they do not give credit for substitute revenues actually earned by ProShipLine. ProShipLine would only be entitled to lost "profit" if it could prove that Aspen was liable under this Agreement which does not guarantee ProShipLine anything. It cannot recover projected "revenue" which is what the Johnson Declaration purports to establish. Without the overhead component and substitute revenue component, the numbers proposed by ProShipLine are meaningless. See: *Ronda Ship Mgmt. v. Doha Asian Games Organizing, Comm.*, No. 07 Civ. 94, 2007 U.S. Dist. LEXIS 72694, 2007 WL 2812897, at *3 (S.D.N.Y. Sep. 20, 2007).

---

[1] Neil Johnson, the very same "principal" of ProShipLine who made the Declaration, was also a director of SE Shipping at that time.

## ALLOWING PROSHIPLINE TO MAINTAIN
## THIS ACTION WOULD DRAMATICALLY INCREASE
## THE NUMBER OF MARITIME ATTACHMENTS

As the Court is aware from Aspen's moving papers and from the oral argument on January 16, 2008, Aspen contests the effect of the alleged assignment of the Agreement from EP-Team to ProShipLine. In Washington and Texas, EP-Team and ProShipLine are acting together. It is only before this Court that ProShipLine is maintaining an independent action. The only logical reason for this is the fact that Aspen had already consented to this Court's jurisdiction by bringing suit against EP-Team, prior to the ProShipLine filing. EP-Team could not take advantage of the *ex parte* feature of Rule B since it was already being sued based upon the same contract.

ProShipLine/EP-Team's legalistic slight of hand has implications greater than the current case. If the Court allows a party to maintain what is in essence a "counter-Rule B proceeding" simply by effecting an assignment, the number of Rule B filings will double overnight. Any party which is targeted by a Rule B action in New York will be able to obtain a strategic advantage by asserting its counter claim by way of a separate Rule B action, thus taking advantage of the *ex parte* nature of the process. Aspen seriously doubts that this was intended by the Federal Rules of Civil Procedure, why include a provision for counter security, if that were the case? This Court has the authority to put an end to this misuse of the Rule B process. *See: Rapture Shipping v. Allround Fuel Trading B.V. Chemoil,* 2006 U.S. Dist. LEXIS 60771 (S.D.N.Y. 2006)(Keenan, J.); *Chiquita Int'l Ltd. v. m/v BOSSE,* 2007 U.S. Dist. LEXIS 75729 (S.D.N.Y.)(Leisure, J.).

## **CONCLUSION**

Defendant, Aspen respectfully requests that this Court grant its application to vacate the current Process of Maritime Attachment and Garnishment issued against it and that this Court Order the return of Aspen's funds being wrongfully held by ProShipLine and for such additional and further relief as may be just and proper.

Dated: January 18, 2008
      New York, New York

                **DEORCHIS & PARTNERS, LLP**
                *Attorneys for Defendant*
                ASPEN INFRASTRUCTURES LTD.

                By:   **/S/ John A. Orzel**
                    John A. Orzel (JO-2420)
                    61 Broadway, 26th Floor
                    New York, New York  10006-2802
                    (212) 344-4700
                    Our File:  2064-2