UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

PROSHIPLINE INC.,

                Plaintiff,         07 Civ. 10969

   -against-                      OPINION

ASPEN INFRASTRUCTURES LTD.,
f/k/a/ SUZLON INFRASTRUCTURE
LTD.,

                Defendant.

------------------------------------X

A P P E A R A N C E S:

       Attorney for Plaintiff

       HILL, RIVKINS AND HAYDEN
       45 Broadway, Suite 1500
       New York, NY  10006
       By:  John James Sullivan, Esq.
            Christopher Michael Panagos, Esq.


       Attorney for Defendants

       DEORCHIS & PARTNERS, LLP
       61 Broadway, 26th Floor
       New York, NY  10006-2802
       By:  John A. Orzel, Esq.

**Sweet, D.J.**

Defendant Aspen Infrastructures Ltd. ("Aspen" or the "Defendant") has moved pursuant to Supplemental Admiralty Rule E(4)(f) of the Federal Rule of Civil Procedure to vacate the Order and Process of Maritime Attachment and Garnishment issued at the request of plaintiff ProShipLine Inc. ("ProShipLine" or the "Plaintiff").

For the reasons set forth below the motion is granted, and the attachment is vacated.

**Prior Proceedings**

On August 6, 2007, EP-Team, Inc. ("EP-Team") and ProShipLine jointly filed suit against Aspen in the United States District Court for the Southern District of Texas, EP-Team and ProShipLine v. Aspen Infrastructures, 07 Civ. 2549 (the "First Texas Action"), seeking declaratory relief with respect to the construction and enforcement of the contract between the parties (the "Agreement"), to compel arbitration, and to order the payment of funds to the

1

registry of the Court pending the resolution of the dispute between the parties by arbitration or otherwise.

Aspen appeared in the action and moved for an order staying the litigation pending arbitration of the parties' disputes in Singapore (the "Singapore Arbitration"), as required by the Agreement between the parties. After a hearing on December 5, 2007, the First Texas Action was administratively closed by the Court, with leave granted to the parties to apply to reinstate the matter at the close of the Singapore Arbitration.

Aspen demanded arbitration under the Agreement in Singapore on August 30, 2007. On October 9, 2007, Aspen's Singapore counsel invoked the default appointment procedure of the International Arbitration Act and asked that the Singapore International Arbitration Center appoint an arbitrator on behalf of EP-Team. EP-Team responded to the SIAC on October 11, 2007, and appointed its party arbitrator on October 16, 2007.

On December 10, 2007, the tribunal in the Singapore Arbitration issued a procedural order between Aspen and EP-Team in accordance with which the Statement of

Claim was to be served by December 21, 2007, and the Statement of Defense by January 16, 2008.

On December 14, 2007, counsel representing both EP-Team and ProShipLine in the Singapore Arbitration advised the tribunal and Aspen that ProShipLine would not be instituting separate arbitration proceedings against Aspen in Singapore and that ProShipLine would seek to litigate its claims against Aspen in the United States District Court for the Southern District of Texas. ProShipLine counsel advised that EP-Team had assigned to ProShipLine "all rights . . . to sue for and recover damages from" Aspen "and/or for breach of any other obligations owed by [Aspen] to [EP-Team]."

On December 21, 2007, Aspen submitted its formal "points of claim" in the Singapore Arbitration.

On October 12, 2007, Aspen filed a suit against EP-Team in the United States District Court for the Southern District of New York, Aspen Infrastructures Ltd. v. E.P. Team, Inc., 07 Civ. 8813 (RWS) (the "First New York Action"), seeking the issuance of an Order and Process of Maritime Attachment against EP-Team. Aspen filed an

3

amended complaint on October 14, 2007. To date, $37,744.98 has been restrained by garnishee banks. EP-Team has not appeared in the action.

On November 27, 2007, EP-Team and ProShipLine filed an action in the United States District Court for the Western District of Washington against Aspen, <u>EP-Team and ProShipLine v. Aspen</u>, 07 Civ. 5660 (FDB) (the "Washington Action"). The suit specifically named eight vessels which Aspen has on charter and which it has been using in its transportation service to the United States as garnishees and asked that the Court issue an Order and Writ of Maritime Attachment and Garnishment. Upon arrival of the m/v Margaretha Green within the jurisdiction of the Court, it was served with the writ, and Aspen posted a "Maritime Release Bond" in the amount of $532,539.00, which represented the value of Aspen's property on board the vessel.

Subsequently, the m/v Beluga Fusion, another vessel being used by Aspen in its transportation service to the United States, called within the jurisdiction of the United States District Court for the Western District of Washington. In response to an emergency motion by Aspen,

4

the Court ordered that EP-Team and ProShipLine remove all of the Aspen property from the vessel by noon on December 30, 2007. EP-Team and ProShipLine are currently holding the property within the jurisdiction of the Western District of Washington. The value of the removed property was more than $93,000.00. In addition, Aspen posted a bond in the amount of $52,455.24.

On December 3, 2007, ProShipLine filed this action against Aspen, ProShipLine v. Aspen, 07 Civ. 10969 (RWS) (the "Second New York Action"), seeking an Order and Writ of Maritime Attachment and Garnishment against Aspen in the amount of $5,750,000.00. On Saturday, January 5, 2008, ProShipLine's counsel gave notice that $1,999,964.00 had been restrained by garnishee Citibank.

On December 7, 2007, EP-Team and ProShipLine filed an action in the United States District Court for the Southern District of Texas, EP-Team/ProShipLine v. Aspen, 07 Civ. 4170 (the "Second Texas Action"), seeking an Order and Writ of Maritime Attachment and Garnishment against Aspen and naming the m/v Beluga Revolution as a garnishee. By Opinion and Order dated December 18, 2007, the court found that Aspen has a general agent within the

5

jurisdiction and that it was amenable to service of process.

The instant motion to vacate the attachment in the Second New York Action was heard and marked submitted on January 16, 2008.

**The Facts**

Aspen is a corporation existing pursuant to the laws of India with its headquarters located in Pune and is an associated company of Suzlon Energy Ltd., which is engaged in the manufacture and marketing of alternative energy production devices, specifically windmills. As part of its business, Aspen engages in the transportation of cargo by ocean-going vessel to move windmill components from factories in India to the market countries, including the United States. In an attempt to avoid the "deadhead" return of empty vessels from the market countries to India, Aspen entered into the contract carriage business, soliciting cargos in the market countries with destinations in Asia.

Aspen entered into a Sales and Logistics Services Agreement dated April 9, 2006, with EP-Team (the "Agreement"), which provided that Aspen would appoint EP-Team as its "General Sales and Port Services Agent of [Aspen] in the USA" and that EP-Team would establish a sales and management operation to secure freight and other associated revenue for vessels controlled by Aspen calling at the United States and to act as the port agent for the Aspen-controlled vessels calling at US ports, arranging terminal facilities, stevedoring services, cargo handling services, and documentation services. The Agreement provided that any dispute under the Agreement was to be resolved by arbitration in Singapore and that the contract was to be construed and enforced in accordance with English law.

EP-Team established ProShipLine to act as agent for Aspen. In its own right and through ProShipLine, EP-Team arranged terminal facilities, issued bills of lading on behalf of Aspen, arranged cargo handling on the vessels and the receipt and delivery of cargo and collected freight due to Aspen, and opened an "impress account" at the Bank of America bearing account number 4880 0043 9659 into which

7

funds collected on behalf of Aspen were to be deposited and from which authorized payments were to be made.

Aspen became dissatisfied with EP-Team's performance under the Agreement and with significant financial irregularities in connection with EP-Team's administration of the Aspen impress account.

On July 5, 2007, Aspen notified EP-Team that Aspen proposed to effect the transfer of its controlled vessels to a new deponent owner and that the new owners would be making their own arrangements for a US agent. EP-Team responded that the purported termination was in violation of the Agreement and that EP-Team would hold Aspen responsible for damages under the Agreement.

On July 30, 2007, counsel for EP-Team and ProShipLine stated to Aspen's London counsel that as Aspen had terminated the Agreement as of August 1, 2007, EP-Team and ProShipLine would no longer act on behalf of Aspen in any capacity as of July 30, 2007.

Aspen, EP-Team, and ProShipLine have disputed the treatment of the impress account and the collection of freight by EP-Team and ProShipLine since July 30, 2007.

**The Attachment Standard**

When a defendant moves to vacate an attachment pursuant to Supplemental Admiralty Rule E, the plaintiff bears the burden of showing that the filing and service requirements of Supplemental Admiralty Rules B and E were met and that "1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the attachment." Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006). If the plaintiff fails to demonstrate that it has met the requirements, the Court must vacate the attachment.

Plaintiff, however, is not required to prove its case, it must simply meet a prima facie standard. See Ronda Ship Mgmt. v. Doha Asian Games Organising Comm., No. 07 Civ. 94 (CM), 2007 WL 2812897, at *3 (S.D.N.Y. Sep. 20, 2007) ("The majority of courts in this district have

9

understood Aqua Stoli to require the application of the prima facie standard when considering the adequacy of a claim in a maritime vacatur motion.")

Once a defendant's property has been restrained by a maritime attachment order, Rule E(4)(f) provides the defendant with an opportunity to appear before the Court to contest the attachment. See Fed. R. Civ. P. Supp. R. E(4)(F). At a Rule E(4)(f) hearing, defendant "can attack the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings." Fed. R. Civ. P. Supp. R. E(4), Advisory Comm. Note to 1985 Amendment.

If the plaintiff carries its burden of showing that an attachment satisfies the requirements, the district court may still vacate the attachment if the defendant can show that "1) the defendant is present in a convenient adjacent jurisdiction; 2) the defendant is present in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for a judgment." Aqua Stoli Shipping Ltd., 460 F.3d at 436.

10

**The Issues Presented**

According to Aspen, ProShipLine has failed to establish its right to an attachment because the Agreement is an executory contract; Aspen is present in Texas, and ProShipLine has violated the ex parte nature of Rule 4. These contentions are well founded.

**The Agreement is an Executory Contract**

EP-Team and ProShipLine's claims forming the basis for its demand for a maritime attachment are based upon the alleged breach of an executory contract. EP-Team and ProShipLine seek monetary damages for the alleged repudiatory breech of the Agreement under which, as outlined above, EP-Team and ProShipLine were to be compensated for providing services to any vessel under Aspen's control expected to call at US ports in the future. As this Court has previously held, in Dolco Invs., Ltd. v. Moonriver Dev., Ltd., 486 F. Supp. 2d 261, 267-68 (S.D.N.Y. 2007), this type of contractual situation does not support a finding of admiralty jurisdiction. As the Court stated in Dolco Invs., Ltd.:

>     Dolco's claims for economic damages . . .
>     resulting from alleged repudiatory breach of the
>     Agreement or the Oral Agreement by Moonriver do
>     not create an admiralty jurisdiction.  Despite
>     the fact that the Agreement and Oral Agreement
>     pertain to just one vessel, the four year
>     commitment to supply all operational items for
>     the Vessel is analogous to requirements contracts
>     that courts have found to be outside of admiralty
>     jurisdiction, rather than the one-transaction
>     supply or repair contracts that fall within
>     admiralty jurisdiction.  See Compania Argentina [
>     De Navegacion Dodero v. Atlas Mar. Corp., 144 F.
>     Supp. 13, 14 (S.D.N.Y. 1956)] (distinguishing
>     executory contracts for repair of a specific ship
>     at a specific time as within admiralty from
>     general requirements contracts as outside of
>     admiralty); Steamship Overdale Co. v. Turner, 206
>     F. 339, 341 (E.D. Pa. 1913) (contract to supply
>     fuel to fleet of ships not within admiralty
>     jurisdiction); Garcia [v. Warner, Quinlan Co., 9
>     F. Supp. 1010, 1011 (S.D.N.Y. 1934)](same); cf.
>     The Yankee, 37 F. Supp. 512, 514 (E.D.N.Y. 1941)
>     (holding that entire repudiation of repair
>     contract by the defendant is not within admiralty
>     jurisdiction).

**The Defendant is Present in Texas**

The Court of Appeals has held that the district court may vacate an attachment if a defendant in a Rule B action is present in the district where the plaintiff is located.  See Aqua Stoli Shipping Ltd., 460 F.3d at 436.  By its Opinion and Order dated December 18, 2007, the United States District Court for the Southern District of Texas has already found that Aspen is present within that

12

district, where ProShipLine has its headquarters and principal place of business.

**Rule B Has Been Misapplied**

ProShipLine was organized by EP-Team to perform its obligations under the Agreement. In the actions that were filed in connection with the Agreement, EP-Team and ProShipLine have been joint plaintiffs. ProShipLine, as assignee, is asserting the rights of EP-Team against Aspen and ProShipLine filed the attachment claiming to be assignee of the rights and liabilities under the Agreement from EP-Team. After the tribunal in the Singapore Arbitration had set a procedural timetable for the arbitration of disputes between Aspen and EP-Team, EP-Team assigned its right to "sue for and recover damages from" Aspen to ProShipLine.

The issue of a party attempting to abuse the <u>ex parte</u> nature of Rule B is not new to this District. In <u>Rapture Shipping v. Allround Fuel Trading B.V. Chemoil</u>, No. 06 Civ. 5926 (JFK), 2006 U.S. Dist. LEXIS 60771 (S.D.N.Y. Aug. 28, 2006), the Honorable John F. Keenan was faced with a situation where a plaintiff seeking a Rule B attachment

13

ignored an earlier filed action in order to file a new lawsuit seeking the issuance of a Writ of Maritime Attachment and Garnishment. Judge Keenan held that:

> Rapture, by its own admission, did not seek a Rule B ex parte attachment. Once Allround answered, thereby consenting to the Court's jurisdiction, there could be no ex parte attachments because 'security cannot be obtained except as an adjunct to obtaining jurisdiction.' Seawind Compania, S.A. v. Crescent Line, Inc., 320 F.2d 580, 582 (2d Cir. 1963). Now, by commencing [the instant action], Rapture has obtained the ex parte security anyway, even though [the prior action] was still pending, and even though there was no longer any jurisdictional issue in that matter. In the Court's view, this is not the purpose of Rule B. Moreover, contrary to Rapture's contentions, [the instant action] is no different from [the prior action]. They arise out of the same event (the delivery of allegedly defective fuel), involve the same parties (other than the extra defendant in [the prior action]), and are pending in the same court at the same time.

Rapture Shipping, 2006 U.S. Dist. LEXIS 60771, at *5.

Rapture Shipping is distinguishable from the present case in that ProShipLine's action seeking a maritime attachment has ostensibly different parties than the action filed by Aspen filed against EP-Team. However, ProShipLine's decision to file its Southern District of New

14

York action individually has as its evident purpose the <u>ex parte</u> attachment of significant funds belonging to Aspen.

In <u>Chiquita Int'l Ltd. v. m/v Bosse</u>, 518 F. Supp. 2d 589 (S.D.N.Y. 2007), the Honorable Peter K. Leisure held that it was improper for the defendant in an earlier filed pending law suit to file a separate action against the plaintiff in the earlier filed action and to seek a maritime attachment. Both suits involved in the <u>Chiquita</u> case arose from the same contract and the same alleged breach of contract. Judge Leisure noted:

> [In <u>Rapture Shipping Ltd.</u>,] Judge Keenan stated that it was improper for the plaintiff to obtain ex parte security when an earlier case arising out of the same event, between the same parties, and before the same court, was still pending, and jurisdiction over the defendant in the prior action was not an issue because the defendant had submitted to the jurisdiction of the Court. Judge Keenan noted that 'this is not the purpose of Rule B.' The instant case differs procedurally from <u>Rapture Shipping Ltd.</u> because the Chiquita and Bosse actions are not 'wholly duplicative,' and Bosse is the defendant in the prior action, not the plaintiff. Nonetheless, Bosse obtained ex parte security that is inconsistent with the purposes of Rule B. As did the plaintiff in Rapture Shipping Ltd., Bosse obtained ex parte security even though an earlier case arising out of the same events, between the same parties, and before the same court, is still pending. In addition, Bosse would have no jurisdictional issues because [Chiquita co-party]

15

> GWF had already submitted to the jurisdiction of the Court by filing the Chiquita action.

Chiquita Int'l Ltd., 518 F. Supp. 2d at 599 (internal citations omitted).

Judge Leisure went on to criticize the actions of the plaintiff who sought to obtain the benefits of the ex parte nature of a maritime attachment:

> Essentially, Bosse abused the attachment process and took advantage of the ex parte nature of a Rule B order, despite Bosse's knowledge that GWF already was before the Southern District of New York in the related Chiquita action arising out of the same facts and between the same parties. The purpose of a maritime attachment is to 'secure jurisdiction over an absent party and to get security for a potential judgment where the absent party's assets are transitory.' Aqua Stoli Shipping Ltd., 460 F.3d at 435. GWF, however, was not an 'absent party,' and securing jurisdiction was unnecessary considering the pending Chiquita action. Given Bosse's knowledge of the pending Chiquita action, seeking an ex parte order of attachment in the Bosse action was an improper practice and showed a want of equity on the part of Bosse. See Maersk, Inc. [v. Neewra, Inc., 443 F. Supp. 2d 519, 528 (S.D.N.Y. 2006)]. Ultimately, Bosse's actions are not in accordance with the purposes of maritime attachments. Therefore, GWF's motion to vacate is granted.

Instead of appearing in the First New York Action as an assignee of EP-Team, where it would be entitled to

16

assert a counterclaim and to seek counter security, ProShipLine filed a separate lawsuit knowing that Aspen was before the Court and yet still asserted that Aspen was not "found" within the District. ProShipLine's maritime attachment must therefore be vacated.

As the Second Circuit has stated, "[t]he inherent power to adapt an admiralty rule to the equities of a particular situation is entrusted to the sound discretion of the district judge." Transp. Contractors, Ltd. v. Industries Chemiques du Senegal, 411 F. Supp. 2d 386, 396 (S.D.N.Y. 2006) (citing Greenwich Marine v. s/s Alexandra, 339 F.2d 901, 905 (2d Cir. 1965)). See also Blake Maritime v. Petrom, No. 05 Civ. 8033 (PAC), 2005 WL 2875335, at *2 (S.D.N.Y. Oct. 31, 2005) ("[A] district court has the inherent authority to vacate an attachment 'upon a showing of 'any improper practice' or a 'manifest want of equity on the part of plaintiff.'" (internal citations omitted)), cited in Transp. Contractors, Ltd., 411 F. Supp. 2d at 386.

**Conclusion**

For the reasons set forth above, the Aspen motion is granted and the attachment is vacated.

17

It is so ordered.


New York, N.Y.
January        , 2008

                                    _____
                                    ROBERT W. SWEET
                                         U.S.D.J.

It is so ordered.

New York, N.Y.
January        , 2008

                                    _____
                                    ROBERT W. SWEET
                                         U.S.D.J.