UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PROSHIPLINE, INC.,

                                  Plaintiff,

                 - against -                    07 Civ. 10969 (RWS)

ASPEN INFRASTRUCTURES, LTD. f/k/a
SUZLON INFRASTRUCTURES, LTD.

                                  Defendants.
------------------------------------------------------------X

# MEMORANDUM OF LAW
# IN OPPOSITION TO PLAINTIFF'S
# APPLICATION FOR A STAY IN
# EXECUTION OF THE COURT'S ORDER
# VACATING MARITIME ATTACHMENT

**DEORCHIS & PARTNERS, LLP**
61 Broadway, 26th Floor
New York, New York 10006-2802
(212) 344-4700

*Attorneys for Defendant*
**ASPEN INFRASTRUCTURES LTD.**

John A. Orzel
*-of Counsel-*

**TABLE OF CONTENTS**

**INTRODUCTION**..................................................................................................................1

**BACKGROUND** ..................................................................................................................2

**LEGAL ARGUMENT**.........................................................................................................3

    **POINT I** .....................................................................................................................3
          **PROSHIP HAS NOT CARRIED ITS BURDEN**
          **TO ESTABLISH ITS RIGHT TO THE EXTRAORDINARY**
          **RELIEF BEING SOUGHT**

          *1.    ProShip has not established that there is a substantial*
                *possibility of success on the merits:*……………………………………5

          *2.    ProShip has not established risk of irreparable injury*
                *absent a stay:*……………………………………………………..…………8

          *3.    Aspen would be substantially harmed if the*
                *stay is granted:*……………………………………………………………..10

          *4.    Any public interest involved in ProShip's*
                *application support denial of the stay:*……………………….…………11

    **POINT II**..................................................................................................................12
          **PROSHIP SHOULD NOT BE ALLOWED**
          **TO POST A MINIMAL SUPERSEDEAS BOND TO**
          **EXTEND THE STAY PENDING APPEAL**

**CONCLUSION** ....................................................................................................................14

## INTRODUCTION

Defendant, Aspen Infrastructures, Ltd., (hereinafter "AIL" or "Aspen"), opposes the application by plaintiff, ProShipLine, Inc., (hereinafter "PSL" or "ProShip") for a stay in the execution of this Court's February 1, 2008 Opinion, (hereinafter "Opinion") vacating the Writ of Maritime Attachment and Garnishment previously issued pursuant to this Court's Order. ProShip also seeks the ability to file a "Substitute or Reduced Supersedeas Bond" as required by Federal Rule of Civil Procedure 62(c) and/or 62(d). Without prejudice to Aspen's primary submission that no stay should be allowed in this case, Aspen opposes any extension to the stay period (no matter how temporary) without the provision of a full supersedeas bond.

ProShip's current application to delay the return of Aspen's US$2,353,110.55 which has been restrained is nothing more than a further attempt by ProShip and its parent company, EP-Team, together with their officers and directors to systematically dismantle AIL's business in the United States based upon a spurious claim for the alleged breach of a Sales and Logistics Services Agreement entered into between AIL and EP-Team. As proven by the accompanying Supplemental Declaration of Sanjeev Bangad, the general manager of AIL, the claims being asserted by ProShip are not only executory in nature, as they seek future lost profits, but they are completely speculative as the Declaration of Neil Johnson which ProShip had previously submitted in support of its claim is not based upon facts. ProShip's alleged damages are based upon the imagination of Mr. Johnson, a self-described 'principal' of ProShip, and the other ProShip officers and directors. *See Supplemental Declaration of Sanjeev Bangad dated February 11, 2008 at ¶ 7. (Hereinafter "Bangad Suppl. Decl.).*

To further stay the execution of the Court's Opinion would adversely affect Aspen's ability to continue to carry on its business. *See Bangad Suppl. Decl. at ¶ 3 – 5.* Aspen is a large

1

and financially sound company, however, no company, no matter how large or well run, can survive while its cash flow is being systematically tied up by predatory litigants in three different United States Courts. *See Bangad Suppl. Decl. at ¶5.* Not only have PSL and EP-Team tied-up the US$2,353,110.55 being held pursuant to the now vacated attachment issued by this Court, but they are also holding approximately US$677,539.00 in the Western District of Washington and a further US$684,328.07 in funds that PSL and EP-Team admit belong to Aspen, but which they have refused to return. PSL and EP-Team are holding a total of US$3,714,977.62 in funds or other assets belonging to Aspen as supposed security for a claim which does not exist. *See Bangad Suppl. Decl. at ¶6.* Aspen prays that this Court does not allow ProShip and its "puppeteer" EP-Team to perpetuate the current terrorizing of Aspen.

## BACKGROUND

In the interest of brevity, AIL will limit its recitation of the background facts of this matter to those which are particularly relevant to the current application by ProShipLine.

As the Court is aware, this matter arises from a Sales and Logistics Services Agreement between AIL and EP-Team, dated April 9, 2006 (hereinafter "Agreement"). *Opinion at pg. 7.* Under the Agreement, EP-Team established the plaintiff ProShipLine. *Id.* In July, 2007, Aspen notified EP-Team that Aspen's controlled vessels were going to be transferred to a new disponent owner and that the new owners would be making their own arrangements for U.S. agents and that as a result, the services of EP-Team/ProShip would no longer be needed. *Bangad Declaration dated January 9, 2008 (hereinafter "Bangad Initial Decl.") at ¶ 7; Opinion at pg. 8.* While Aspen did not intend this notification to act as termination of the Agreement and informed

EP-Team of that fact ( *See Bangad Initial Decl. at ¶ 8*), EP-Team terminated the Agreement as of midnight on July 31, 2007. *Bangad Initial Decl. at ¶ 9.*

Following EP-Team's termination of the Agreement, EP-Team and ProShip have embarked upon a sustained course of action which has appeared to be calculated to damage, if not completely shut-down, Aspen's business. *Bangad Suppl. Decl. at ¶ 4 – 7.* EP-Team and ProShip have managed to deprive Aspen of the use of at least US$3,714,977.62 in funds and other assets and have managed to interfere with the Aspen controlled vessels which have called within the United States District Court for the Western District of Washington since the end of November, 2007.

Aspen has been successful in defeating EP-Team/ProShip's efforts to seek a writ of maritime attachment in the Southern District of Texas, based upon the presence of both ProShip and Aspen within that jurisdiction. *See Orzel Declaration dated January 9, 2007, (hereinafter "Orzel Decl.") at ¶ 5 and Exhibit K.* Aspen has also been successful before this Honorable Court in trying to bring a halt to EP-Team/ProShip's harassing litigation. A motion seeking to have the Western District of Washington attachment vacated is being filed today.

### LEGAL ARGUMENT

### POINT I

### PROSHIP HAS NOT CARRIED ITS BURDEN TO ESTABLISH ITS RIGHT TO THE EXTRAORDINARY RELIEF BEING SOUGHT

As a preliminary matter, the questioned has to be asked, what is ProShip seeking in this application? The answer to that question is that ProShip wants the Court to continue to deprive Aspen of its funds which the Court has already found should be released to Aspen. In other

3

words, ProShip wants this Court to sanction ProShip's continued efforts to put Aspen out of business. Aspen prays that the Court will not allow this situation to continue.

It is accepted that when a litigant is seeking a stay pending appeal of a court's decision which does not award the prevailing party monetary damages, the proper procedural vehicle is Federal Rule of Civil Procedure 62(c):

> However, the Court's Opinion was not a money judgment, but rather a declaratory judgment which determined the scope of Federal's obligation. Furthermore, the decision awarded no fix sum of money; indeed, the parties agree that the amount due under the insurance policy is currently unknown. As such, Rule 62(d) is inapplicable. See, e.g., *Hebert v. Exxon Corp.*, 953 F.2d 936, 938 (5th Cir. 1992) (granting a Rule 62(d) stay only where the declaratory judgment required payment of "a specific sum of money"); *J. Perez & CIA., Inc. v. United States,* 747 F.2d 813, 814 (1st Cir. 1984) (denying a Rule 62(d) stay where the ruling "is more naturally viewed as a case involving an order to do, or not to do, something . . . rather than a case involving a money judgment.").
>
> At its discretion, a court may grant a stay under Rule 62(c) "upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party." Fed.R.Civ.P. 62(c).
>
> In deciding whether to grant such a stay, a court should consider the following four factors:
>
>> 1) Whether the movant has demonstrated "a substantial possibility, although less than a likelihood, of success" on appeal;
>>
>> 2) The risk of irreparable injury to the movant absent a stay;
>>
>> 3) The lack of substantial harm to the non-movant if the stay is granted;
>>
>> 4) The public interests that may be affected.
>> *Hirschfeld v. Bd. Of Elections,* 984 F.2d 35, 39 (2d Cir. 1993).

*In Re Tower Automotive,* 2007 U.S. Dist. LEXIS 49282 (S.D.N.Y.)(Sweet, J.); (Accord, *Centauri Shipping Ltd., v. Western Bulk Carriers,* 2007 U.S. Dist. LEXIS 77953 (S.D.N.Y.)(Sullivan, J.)(Holding an application for a stay of an Order vacating a Rule B Attachment is properly brought under F.R.Civ.P. 62(c)).

A party seeking a stay pending appeal bears a heavy burden of proving its entitlement to such an extraordinary remedy. *U.S. v. Private Sanitation Industry Ass'n of Nassau/Suffolk,* 44 F.3d 1082, 1084 (2d Cir. 1995)("A party seeking a stay of a lower court's order bears a difficult burden"); See also, *Clarett v. NFL,* 306 F. Supp. 2d 411, 412 (S.D.N.Y. 2004); *Neely v. Pension Trust Fund,* 2003 U.S. Dist. LEXIS 12497 (E.D.N.Y. June 4, 2003). In the present case, ProShip's moving papers fail to establish that it is entitled to a stay under any of the four factors noted in *Tower Automotive.*

1.  ***ProShip has not established that there is a substantial possibility of success on the merits:***

Plaintiff ProShip has cited to no precedent in its application that would call into question this Court's Opinion dated February 1, 2008. ProShip has provided nothing in its papers other than a recitation of the arguments made in opposition to Aspen's successful application for an order vacating the attachment. In order to be successful, ProShip has to convince the Second Circuit that it was wrong in deciding *Aqua Stoli v. Gardner Smith,* 460 F.3d 434 (2d Cir. 2006).

Regardless of ProShip's hope that the Second Circuit will decide that the presence of both ProShip and Aspen in the Southern District of Texas does not preclude ProShip from obtaining a Rule B attachment over Aspen's property in the Southern District of New York, it is suggested that the probability of such an occurrence is remote.[1] In order for ProShip to be successful before the Second Circuit, the Court of Appeals will either have to hold that *Aqua Stoli* was decided incorrectly or that this Court abused its discretion in holding that the presence

---

[1] ProShip argues at page 6 of its Memorandum of Law in support of its application that this Court should have exercised its discretion to have denied Aspen a Rule B attachment against EP-Team in Aspen's separate action under 07 Civ. 8813 (RWS). ProShip ignores the fact that EP-Team, the defendant in that action, is located in Flower Mound, Texas, outside of Dallas, which is the Northern District of Texas, not the Southern District of Texas, where the Southern District of Texas held that both ProShip and Aspen are present.

5

of both ProShip and Aspen in the Southern District of Texas prevents ProShip from maintaining a Rule B attachment against Aspen.

This Court also found that there is no admiralty jurisdiction over the executory portion of the Agreement between Aspen and EP-Team. *Opinion at pg. 11.* As this was a separate and independent ground for vacating ProShip's Rule B attachment against Aspen, ProShip must also demonstrate a substantial possibility of success on an appeal of this issue. In its Memorandum of Law in Support of it present application, ProShip again simply attempts to reargue the same points upon which it had already lost. *See ProShip Memo of Law in Support at pg. 5.*

ProShip misunderstands the nature of the holding in *Dolco Investments v. Moonriver Development,* 486 F. Supp. 2d 261 (S.D.N.Y. 2007). ProShip cites to cases which stand for the proposition that a court must look to the nature of the contract in order to determine whether that contract supports maritime jurisdiction. In this case, it is not the status of the Agreement between Aspen and EP-Team as a maritime contract that is in issue. The nuance of the *Dolco* decision is that the claims for future damages due to the alleged repudiatory breach of the maritime contract does not support a finding of maritime jurisdiction:

> However, Dolco's claims for economic damages (its Second and Third Causes of Action) resulting from alleged repudiatory breach of the Agreement or the Oral Agreement by Moonriver do not create an admiralty jurisdiction. Despite the fact that the Agreement and Oral Agreement pertain to just one vessel, the four year commitment to supply all operational items for the Vessel is analogous to requirements contracts that courts have found to be outside of admiralty jurisdiction, rather than the one-transaction supply or repair contracts that fall within admiralty jurisdiction. *See Compania Argentina,* 144 F. Supp. at 14 (distinguishing executory contracts for repair of a specific ship at a specific time as within admiralty from general requirements contracts as outside of admiralty); *Steamship Overdale Co. v. Turner,* 206 F. 339, 341 (E.D. Pa. 1913) (contract to supply fuel to fleet of ships not within admiralty jurisdiction); *Garcia,* 9 F. Supp. at 1011 (same); cf. *The Yankee,* 37 F. Supp. 512, 514

> (E.D.N.Y. 1941) (holding that entire repudiation of repair contract by the defendant is not within admiralty jurisdiction).

*Dolco, Id.*, 486 F. Supp. 2d at 467-468.

The distinction between the portion of a contract that has been performed and the portion that remains executory can be clearly illustrated:

> But it has been held that a contract whereby a dealer in coal agrees to furnish to the owner of several steamships all the coal required by the steamships for a period of time is not a maritime contract as to any part that remains executory, and that consequently admiralty has no jurisdiction of a suit against the seller for failure to supply coal to one of the buyer's ships. *Steamship Overdale Co. v. Turner,* 206 F. 339 (D.C. Pa.). The case has been referred to with approval in later cases. *Terminal Shipping Co. v. Hamberg,* 222 F. 1020, 1021 (D.C. Md.); The Walter Adams, 253 F. 20, 24 (C.C.A. 1), *affirmed* 254 U.S. 1, 41 S. Ct. 1, 65 L. Ed. 97. The *Overdale* Case is directly in point. The exception is therefore sustained and the libel dismissed.

*Garcia v. Warner, Quinlan Co.*, 9 F. Supp. 1010, 1011 (S.D.N.Y. 1934).

ProShip's claims against Aspen are all for future losses based upon the alleged breach of the Agreement. Unlike Aspen's claims against EP-Team in the companion case which arise from EP-Team's performance under the Agreement, ProShip's claims are entirely executory and therefore do not support maritime jurisdiction and as a consequence, cannot support a Rule B attachment.

This Court also found that ProShip abused the *ex parte* nature of Rule B when it filed the present action against Aspen as opposed to simply availing itself of the previously filed action by Aspen against EP-Team, to assert a counterclaim. *Opinion at pg. 16 – 17.* Without citation to any precedent, ProShip relies upon the fact that it was not named in the Aspen v. EP-Team action as grounds for filing a separate action. *ProShip's Memo in Support at pg. 7.* ProShip cites no precedent as there is none that would support its inappropriately taking advantage of the Rule B procedures. This Court noted that the claims asserted by ProShip are derivative of the

7

alleged assignment from EP-Team to ProShip. This Court also noted that EP-Team and ProShip have acted in unison in each of the three other legal actions that have been filed in the U.S. *Opinion at pg. 13 – 17.* The Second Circuit has held that the "inherent power to adapt an admiralty rule to the equities of a particular situation is entrusted to the sound discretion of the district judge." *Greenwich Marine v. s/s ALEXANDRA,* 339 F.2d 901, 905 (2d Cir. 1965). ProShip has not established a substantial possibility that this Court abused that sound discretion in holding that ProShip abused the Rule B process and Ordering the attachment vacated.

2.     *ProShip has not established risk of irreparable injury absent a stay:*

ProShip makes no showing with regard to "irreparable injury" in the event that the stay is not granted. ProShip's only showing in this regard is that Aspen would get its money back. *See ProShip's Memo of Law in Support at pg. 8.* This "argument" does not even come close to meeting the minimum requirement for showing irreparable injury.

As this Court has noted, irreparable injury would be something like the bankruptcy of Aspen:

> The second factor -- the likelihood of irreparable injury to Federal should the stay be denied -- also weighs in favor of granting the motion. Because Tower is currently in bankruptcy, there is the distinct possibility that Federal, if it prevails upon appeal, will be unable to recover some or all of the amounts expended. While it is difficult to gauge the likelihood of this eventuality, such a scenario would surely constitute irreparable injury to Federal. This is precisely the reason a court would issue a stay under Rule 62. *See Donovan v. Fall River Foundry Co.,* 696 F.2d 524, 526 (7th Cir. 1982).

*In Re Tower Automotive,* 2007 U.S. Dist. LEXIS 49282 (S.D.N.Y.).

The alleged irreparable injury must be "neither remote nor speculative, but actual and imminent." *EEOC v. Local 638,* 1995 U.S. Dist. LEXIS 7756 (S.D.N.Y. June 7, 1995); *Consolidated Brands v. Mondi,* 638 F. Supp. 152, 155 (E.D.N.Y. 1986). Aspen has voluntarily availed itself of the jurisdiction of this Court by bringing suit against EP-Team in the companion

8

case. Aspen has also appeared in every action that EP-Team/ProShip has filed in order to defend itself. Despite the fact that Aspen has US$3,714,977.62 in funds and other assets under restraint by EP-Team/ProShip, Aspen has not ceased operation or threatened bankruptcy (despite the best efforts of EP-Team/ProShip to cause such an eventuality). While ProShip may not be as secure if the stay is denied, that situation would not be an irreparable injury. "[W]hile plaintiff clearly would be less secure in the absence of the attachment, it would suffer no prejudice if the attachment were vacated. Indeed, its position would be no worse than that of any other plaintiff in a civil action." *Signet Shipping v. Southern Hardwoods,* 108 F.Supp 2d 649, 650 (E.D. La. 2000); *Allied Maritime v. Rice Corp.,* 2004 U.S. Dist. LEXIS 20353 (S.D.N.Y. 2004).

As has been noted by the courts of this district, simple monetary damages, without some further element such as insolvency, do not justify the extraordinary relief sought by ProShip:

> As a general matter, because monetary injury can be estimated and compensated, the likelihood of such injury usually does not constitute irreparable harm." *Brenntag Int'l Chem., Inc. v. Bank of India,* 175 F.3d 245, 249 (2d Cir. 1999) (citing *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir. 1979) *(per curiam)*; see also *Ford v. Reynolds,* 316 F.3d 351, 355 (2d Cir. 2003) ("To establish irreparable harm, the injury alleged 'must be one requiring a remedy of more than mere money damages.") (quoting *Tucker Anthony Realty Corp. v. Schlesinger,* 888 F.2d 969, 975 (2d Cir. 1989)); *E.E.O.C. v. Local 638,* No. 71-CV-2877 (RLC), 1995 U.S. Dist. LEXIS 7756, 1995 WL 355589, at *2 (S.D.N.Y. June 7, 1995) ("Irreparable injury means 'the kind of injury for which money cannot compensate,' and therefore [*24] '[a] monetary loss will not suffice unless the movant provides evidence of damage[] that cannot be rectified by financial compensation.'") (quoting *Sperry Int'l Trade, Inc. v. Gov't of Israel,* 670 F.2d 8, 12 (2d Cir. 1982), and *Tucker Anthony Realty Corp.,* 888 F.2d at 975). However, "courts have excepted from the general rule regarding monetary injury situations involving obligations owed by insolvents." *Brenntag Int'l Chem.*, 175 F.3d at 250 (collecting cases). Accordingly, monetary injury may suffice to establish irreparable harm in situations "where the party that might ultimately be ordered to pay the monetary damages is insolvent or facing imminent bankruptcy, or is in a perilous financial state." *Bridgeport, Port Jefferson Steamboat Co. v. Bridgeport Port Auth.*, No. Civ. A. 3:03-CV-599 (CFD), 2004 U.S. Dist. LEXIS 6643, 2004 WL 840140, at *3 (D.

>           Conn. April 15, 2004) (internal quotation marks and citations omitted);
>           accord *Sea Carriers Corp. v. Empire Programs, Inc.,* No. 04-CV-7395
>           (RWS), 2006 U.S. Dist. LEXIS 83843, 2006 WL 3354139, at *4
>           (S.D.N.Y. Nov. 20, 2006) ("Monetary loss therefore will not suffice unless
>           the movant shows damage that cannot be rectified by financial
>           compensation . . . . One such exception is where the party to be enjoined
>           is shown to be insolvent or imminently insolvent."); *Mitsubishi Power
>           Sys., Inc. v. Shaw Group, Inc.,* No. 04-CV-1251 (RMB), 2004 U.S. Dist.
>           LEXIS 4125, 2004 WL 527047, at *2 (S.D.N.Y. March 16, 2004)
>           ("Courts have generally applied this limited exception where insolvency is
>           imminent.").

*Centauri Shipping v. W. Bulk Carriers Ks*, 2007 U.S. Dist. LEXIS 77953, 23-25 (S.D.N.Y. 2007)

ProShipLine's own case for damages amounting to US$5,889,930.00 million over a period up to March 2010 (Neil Johnson's spreadsheet does refer to 2009 but he calculates the "damages" up to 2010) is itself premised on the recognition that Aspen is a substantial company that ProShip expects to be doing substantial business in the US (much of that in the same District in which ProShipLine is based) far into the future.

There is no reason to believe that refusing the stay would irreparably harm ProShip.[2]

### 3.     *Aspen would be substantially harmed if the stay is granted:*

As Sanjeev Bangad, the general manager of Aspen, points out in his Supplemental Declaration, it is naïve to believe that Aspen would be fully protected if the Court were to simply order that the attached funds be placed in an interest bearing bank account. *See ProShip Memo of Law at pg. 8.* No alternative security would be available (nor would insurance have ever been available) to cover this type of claim, a breach of contract not related to any insurable risk. It is not only naïve but it is misleading to the Court. ProShip, as EP-Team's agent to carry out its obligations under the Agreement, knows the degree of difficulty that Aspen is encountering as a result of the deprivation of its working capital. While Aspen has been able to carry on some semblance of it normal business activities, it has taken a Herculean effort by Aspen's employees

---

[2] It should also be noted that as of this date, ProShip has still not instituted arbitration against Aspen, so there is no proceeding in which it could possibly recover damages against Aspen.

and officers. The frustration on the part of Aspen comes-out clearly in Sanjeev Bangad's Supplemental Declaration: ProShip and EP-Team have adversely affected Aspen's business and appear willing to continue to do so, unless they are stopped. There is no possible "remedy" which would make Aspen whole, short of the return of its working capital, placing the funds in an interest bearing account is simply not a realistic option.

4.     *Any public interest involved in ProShip's application support denial of the stay:*

ProShip attempts to boot-strap itself into some form of compelling public interest in favor of the requested stay by arguing that absent the stay, Aspen might not satisfy any potential judgment. *See ProShip Memo of Law in Support at pg. 8.* This "argument" is illogical and unavailing. Unlike the one case cited by ProShip, there has been no allegation that Aspen is unable or unwilling to satisfy any potential judgment or award. More importantly, ProShip has not even asserted a claim upon which relief can be granted. To date, ProShip has refused to initiate arbitration against Aspen in Singapore, as provided in the Agreement, which is the document from which ProShip alleges its claims arise.

Additionally, as found by this Court in its Opinion dated February 1, 2008 and as established by the facts, ProShip's claims are executory in nature and therefore not supportive of admiralty jurisdiction. As a civil litigant, ProShip would not be entitled to security for its claims. It would be an injustice to allow ProShip to obtain security as a result of the legalistic "shell game" which it and its master, EP-Team have been perpetrating before the Federal Courts.

Aspen believes that there is a strong public interest in not rewarding questionable litigation practices. ProShip's application for an extended stay should be denied.

## POINT II

### PROSHIP SHOULD NOT BE ALLOWED TO POST A MINIMAL SUPERSEDEAS BOND TO EXTEND THE STAY PENDING APPEAL

ProShip cites to *Aqua Stoli v. Gardner Smith,* 460 F.3d 434 (2d Cir. 2006) and *Winter Storm Shipping v. TPI,* 310 F.3d 263 (2d Cir. 2002) as examples where a court granted a stay pending appeal upon the posting of minimal supersedeas bonds. What ProShip fails to note to the Court is that in both cases, there was a sum certain that was due and owing under the breached charter party contracts. Unlike those landmark cases, there is no sum certain amount owing before this Court. In fact, the only sums certain in this case are the sums that Aspen is out: Aspen is out US$214,221.63 in freight that ProShip/EP-Team wrongfully invoiced and collected against the express instructions of Sanjeev Bangad in July, 2007 *(See Bangad Initial Decl. at ¶ 10);* Aspen is out US$684,328.07 in collected freight monies which ProShip admits belong to Aspen *(See Bangad Suppl. Decl. at ¶5);* Aspen is out US$2,353,110.55 in funds attached in the Southern District of New York *(See Bangad Suppl. Decl. at ¶ 5)*; Aspen is out US$677,539.00 in funds and assets attached in the Western District of Washington *(See Bangad Suppl. Decl. at ¶ 5).* On the other side of the "ledger" ProShip has failed to assert any claims against Aspen in Singapore arbitration and has asserted only conclusory damages which have no basis in fact and which, as the Court has already found, are totally executory in nature. *(See Aspen Reply Memorandum in Support dated January 18, 2008).*

The esoteric nature of ProShip's alleged damages foreclose any meaningful challenge because they have never been substantiated by ProShip or EP-Team. The only "evidence" of the damages is the Declaration of Neil Johnson dated January 16, 2008. The problem with the Johnson Declaration is that it is evidence of nothing. It presupposes that the Agreement ensured

that Aspen would provide vessels under the Agreement.  There is no guarantee to EP-Team under the Agreement.  *Bangad Initial Decl. at ¶ 20.*   ProShip's claimed damages are completely speculative because they do not even consider the expenses that ProShip would have incurred in fulfilling EP-Team's function under the Agreement.  The claimed damages also fail to acknowledge that EP-Team/ProShip could have (and may have) replaced Aspen's business through agreement with other vessel charterer/vessel operators.

The purpose behind requiring an appealing litigant to post a supersedeas bond is to maintain the *status quo* during the appeal.  *Poplar Grove Planting & Refining v. Bache Halsey Stuart,* 600 F.2d 1189, 1190 (5th Cir. 1979).  This rational, however, does not fit well into the Rule B attachment situation.  The true *status quo* in a Rule B is to return the attached funds to the defendant.  In the normal situation, a losing defendant will seek a stay and post a bond to forestall the execution of a money judgment against it.  In that situation, the stay and bond make sense.  In the Rule B situation, the defendant has had its assets taken away before there is any hearing on the merits.  Once the defendant has defended itself through the post attachment hearing, if it is successful, its property should be returned.  By allowing the losing plaintiff to perpetuate the attachment by posting a minimal bond, the post attachment hearing is rendered meaningless.  The victorious defendant is still being deprived of its property, still without any hearing on the merits.

There is no monetary amount which would make Aspen whole if this Court were to extend the stay.  There is no way to ever know what opportunities Aspen may have missed because ProShip/EP-Team have US$3,030,649.55 attached.  The only way that the Court can protect Aspen is to refuse to extend the stay or, if the stay is to be extended, then order ProShip

to post a bond in at least the full amount of Aspen's assets that have been restrained by court action or through simple conversion by ProShip.

### CONCLUSION

Based upon the foregoing and the prior pleadings filed in this case, defendant Aspen Infrastructures Ltd., prays that this Court denies plaintiff's application for a stay of execution on the Court's Opinion dated February 1, 2008 vacating the process of maritime attachment and garnishment issued against Aspen's property found within the District and that the Court Order the immediate release of all attached property, including electronic fund transfers belonging to Aspen.

In the alternative, if this Court grants plaintiff's application for a stay, Aspen prays that the Court orders plaintiff to post a superdeas bond in at least the full amount of the current attachment.

Defendant Aspen Infrastructures Ltd., further prays for such additional relief as may be deemed just and proper, including an award of Aspen's costs, expenses and attorney fees incurred in connection with this matter.

Dated: New York, New York
       February 12, 2008

                                    **DEORCHIS & PARTNERS, LLP**
                                    *Attorneys for Defendant*
                                    ASPEN INFRASTRUCTURES LTD.

                        By:   **/S/ John A. Orzel**
                             John A. Orzel (JO-2420)
                             61 Broadway, 26th Floor
                             New York, New York 10006-2802
                             (212) 344-4700
                             Our File: 2064-2