HILL RIVKINS & HAYDEN LLP
45 Broadway, Suite 1500
New York, New York 10006
Tel: (212) 669-0600
Fax: (212) 669-0699

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PROSHIPLINE, INC., <br><br>            Plaintiff, <br><br>    vs. <br><br> ASPEN INFRASTRUCTURES, LTD. <br> f/k/a SUZLON INFRASTRUCTURE, LTD., <br><br>            Defendant. | Index No.: 07-cv-10969 (RWS) <br><br> **MEMORANDUM OF LAW IN SUPPORT OF MOTION BY WAY OF ORDER TO SHOW CAUSE FOR A STAY OF EXECUTION OF THE COURT'S ORDER VACATING THE MARITIME ATTACHMENT** |

## INTRODUCTION

Plaintiff ProShipLine, Inc. ("PSL") through its attorneys, Hill Rivkins & Hayden LLP, submits this memorandum in support of its motion by way of order to show cause pursuant to FRCP 62(c) and/or 62(d) for a stay pending appeal of execution of the court's order entered February 1, 2008, vacating Rule B maritime attachments against the property of defendant Aspen Infrastructures Ltd. ("Aspen"). Pursuant to FRCP 62(a), execution of the February 1, 2008, order is automatically stayed for ten days, excluding weekends and holidays, so that the automatic stay could expire by February 15, 2008.

## BACKGROUND

In its February 1, 2008, Opinion, the court concluded that the attachment should be vacated under the Court of Appeals' holding in Aqua Stoli Shipping Ltd. v. Gardner

1

Smith Pty. Ltd., 460 F.3d 434 (2d Cir. 2006), because (1) the contract which PSL
asserted as the basis for its claim was executory, so that it could not support maritime
jurisdiction; (2) both PSL and defendant Aspen were present in the Southern District of
Texas; and (3) Rule B was misapplied by PSL's filing a Rule B action separate from the
action Aspen filed against EP-Team, Inc.  PSL respectfully submits that the Court
misapplied Aqua Stoli to hold that the Texas action or the existence of an agent of Aspen
in Texas bars the attachment in this case.  In addition, PSL respectfully submits that the
issue of whether an executory agreement can support admiralty jurisdiction is an open
question in this circuit, particularly in light of the Supreme Court's decision in Norfolk
Southern Railway Co. v. Kirby, 543 U.S. 14 (2004), which held that in determining
whether a contract can support admiralty jurisdiction a court should evaluate whether the
contract's primary purpose involves maritime commerce.  Finally, PSL submits that it
could not possibly have misapplied or abused Rule B based on a separate action to which
PSL was not even a party, as Aspen had elected to sue only PSL's affiliate and assignor.

For the reasons set forth herein, PSL respectfully moves the Court for an Order
staying execution of the February 1, 2008, Opinion pending the outcome of PSL's appeal.


## ARGUMENT

### A STAY OF THE FEBRUARY 1, 2008, OPINION
### IS PROPER PURSUANT TO FRCP 62(c) AND 62(d)

The taking of an appeal generally divests the district court of jurisdiction. See
Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982) ("The filing of a
notice of appeal ... divests the district court of its control over those aspects of the case
involved in the appeal").  "However, notwithstanding a pending appeal, a district court

retains residual jurisdiction over collateral matters…" <u>Tancredi v. Metropolitan Life Ins.</u> <u>Co.</u>, 378 F.3d 220, 225 (2d Cir. 2004). This includes a stay of execution of the order or judgment that is appealed.

PSL seeks a stay of the February 1, 2008, Opinion pursuant to FRCP 62(d), which states as follows:

> If an appeal is taken, the appellant may obtain a stay by supersedeas bond, except in an action described in Rule 62(a)(1) or (2). The bond may be given upon or after filing the notice of appeal or after obtaining the order allowing the appeal. The stay takes effect when the court approves the bond.

Notwithstanding, the district court has discretion to accept less than a full supersedeas bond or to accept alternative forms of security. Moore's Federal Practice 3d § 62.03[1]. In <u>Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.</u>, 460 F.3d 434 (2d Cir. 2006), the plaintiff/appellant obtained from the district court a stay of execution of the order vacating its attachment pending appeal upon the posting of security in the amount of $10,000.00. Sullivan Declaration Exh. 1. According to the Memorandum of Law submitted by Aqua Stoli's counsel in that matter in support of its Order to Show Cause for a stay, the EFTs under attachment in that case totaled $254,857. Sullivan Declaration Exh. 2. Plaintiff argued, and it was presumably accepted by the Court, that a bond for the full amount under attachment was not necessary, insofar as the defendant would suffer no prejudice because the funds were in an interest bearing escrow account. Sullivan Declaration Exh. 3. Similarly in <u>Winter Storm Shipping Ltd. v. TPI</u>, 310 F.3d 263 (2d Cir. 2002), the district court accepted a reduced bond in the amount of $10,000 and granted the requested stay of the order vacating the attachment. Sullivan Declaration ¶ 7.

Similarly in this case, $2,353,110.55 is currently under attachment. There is no question that the parties can consent to the transfer of the funds to interest bearing accounts. Insofar as this money would earn interest which would inure to Aspen should PSL not prevail on appeal, there is no prejudice to defendants. Accordingly, PSL submits that, as in <u>Winter Storm</u> and <u>Aqua Stoli</u>, a stay should be granted conditioned upon the posting of security for defendants' anticipated costs on appeal which plaintiff submits could not reasonably exceed $15,000.

It has been suggested by this Court that Rule 62(d) is inapplicable to judgments or orders that do not award a fixed sum of money. <u>In re Tower Automotive, Inc.</u>, 2007 WL 1975447 (S.D.N.Y. 2007). If the February 4, 2008 Order is considered to fall outside Rule 62(d), the Court still has the authority to grant a stay under Rule 62(c) which reads:

> Injunction Pending an Appeal. While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights.

As this Court noted, the factors a district court should consider in the sound exercise of its discretion whether to grant a stay pursuant to FRCP 62(c) are as follows:

> 1) Whether the movant has demonstrated "a substantial possibility, although less than a likelihood, of success" on appeal;

> 2) The risk of irreparable injury to the movant absent a stay;

> 3) The lack of substantial harm to the non-movant if the stay is granted;

> 4) The public interests that may be affected.

<u>In re Tower Automotive, Inc.</u>, 2007 WL 1975447, at *2 (citing <u>Hirschfeld v. Board of Elections</u>, 984 F.2d 35, 39 (2d Cir. 1993)).

PSL respectfully submits that there is a substantial possibility of its prevailing on appeal. As to the first ground the Court cited for vacatur, whether PSL's contractual claim is maritime, this Court relied solely on its earlier decision in Dolco Investments. Ltd. v. Moonriver Development, Ltd., 486 F. Supp. 2d 261 (S.D.N.Y. 2007). There is no rule in maritime law that executory contracts cannot be maritime—to the contrary, executory contracts, such as contracts of affreightment, can unquestionably be maritime. Belvedere v. Compania Plomari de Vapores, S.A., 189 F.2d 148 (5th Cir. 1951); Bay Casino, LLC v. M/V Royal Empress, 20 F. Supp. 2d 440, 450 (E.D.N.Y. 1998). Moreover, the Supreme Court recently made clear in Norfolk Southern Railway Co. v. Kirby, 543 U.S. 14, 25-27 (2004), that consideration of whether a contract is a maritime contract must be on a case by case basis, based on whether the primary purpose of the contract is maritime in nature. See, also, Folksamerica Reinsurance Co. v. Clean Water of New York, Inc., 413 F.3d 307, 314-15 (2d Cir. 2005) (holding that the primary purpose of a combined CGL and shiprepairer's legal liability insurance policy was maritime in nature, even though the applicable coverage part was in the non-marine CGL section). The Services Agreement at issue in this case, whereby PSL essentially was to perform Aspen's U.S. function for the fleet of vessels it had under time charter, covered activities that are an integral part of, and in furtherance of, maritime commerce, and consequently, should be cognizable within the admiralty jurisdiction.

Second, PSL respectfully submits that the Court misapplied the Second Circuit's decision in Aqua Stoli and the meaning of "present" under Rule B to require vacatur of the attachment because PSL and Aspen are both supposedly present in the Southern District of Texas. Aqua Stoli merely grants a district court the discretion to vacate an

attachment if both parties are present in another district—the decision does not require

vacatur. Where Aspen itself filed its own Rule B action before the Court against EP-

Team, PSL's affiliate and assignor, despite EP-Team's also being a party to the very

same action on which Aspen relied in this case, the Court should have properly exercised

its discretion to deny Aspen's application on this ground. Aspen sought its own Rule B

action even though it is the party that has claimed that it is present in the very same

jurisdiction as PSL and EP-Team. In addition, PSL submits and intends to argue on

appeal that the standard applied by the Southern District of Texas to find that Aspen was

present there was a misstatement of the law and/or reflected a standard not employed in

this circuit. For a defendant to be "present" within the context of Rule B means that the

defendant is not only subject to *in personam* jurisdiction in a district but also maintains a

permanent presence there to support the conclusion that the defendant can be "found"

within the district, such as through a managing agent or a registered agent for service of

process. See, e.g., Yayasan Sabah Dua Shipping SDN BHD v. Scandanavian Liquid

Carriers, Ltd., 335 F. Supp. 2d 441, 446 (S.D.N.Y. 2004) (holding that defendant was not

present in this district where it had no offices, managing agent or registered agent with

express authority to accept service of process here); Bay Casino, 20 F. Supp. 2d at 452

(holding that the defendant was not present in the district for purposes of Rule B even

though it had a registered agent for service of process and conducted business in the

district to support *in personam* jurisdiction); Royal Swan Navigation Co., Ltd. v. Global

Container Lines, 868 F. Supp. 599, 602-03 (S.D.N.Y. 1994) (concluding that a defendant

could not be found within the district for purposes of Rule B where it had no individuals

who were authorized to accept service of process in the district on a regular basis).

Third, PSL respectfully submits that the Court incorrectly concluded that PSL had misapplied Rule B by filing a separate Rule B action from that commenced by Aspen. PSL was not a party to Aspen's action, and the Court cited, and PSL is aware of, no cases that have held that a non-party is precluded from filing its own action rather than intervening in the earlier case. Every case on which the Court relied involved a plaintiff that was already party to another case in this district against the same party. PSL's filing a separate action, even with an "evident purpose the ex parte attachment of significant funds belonging to Aspen" is not an improper purpose. To the contrary, every plaintiff in a Rule B action has as its evident purpose the attachment of significant funds of the defendant. The Court criticized PSL for not appearing in the action Aspen filed against EP-Team, but a non-party has no right to just enter an appearance in an action. It must file a motion to intervene, which undoubtedly would have been opposed by Aspen in this case.

With regard to the second factor this Court should consider in connection with this motion, PSL clearly would suffer tremendous prejudice if a stay is not granted. If the Court's Opinion is carried into effect, two electronic fund transfers ("EFT"s) totaling $2,353,110.55, one in the hand of garnishee US Bank in the amount of $353,146.55, the other in the amount of $1,999,964.00 in the hands of garnishee Citibank, will be released and certainly will be removed from the district, regardless of whether PSL prevails on appeal.

Moreover, it is not clear that the Court would have the capacity to return of funds to the district if PSL succeeds on appeal. Although removal of a *res* from the district does not divest the court of jurisdiction (Stevedoring Services of America v. Ancora

Transport N.V., 59 F.3d 879 (9th Cir. 1995)), if the EFTs were released, PSL would be entirely unsecured for its claims should it prevail on appeal.  This result is counterproductive to one of Rule B's primary goals: to assure satisfaction of a judgment on a successful suit.  Winter Storm Shipping Ltd. v. TPI, 310 F.3d 263 (2d Cir. 2002); Aurora Maritime Co. v. Abdullah Mohammed Fahem Co., 85 F.3d 44, 48 (2d Cir. 1996). The release of the *res* in this case would effectively result in the prototypical "useless judgment".

Conversely, Aspen would suffer minimal prejudice if the restraint of the attached funds continues.  Aspen does not claim that the attachment is putting it out of business— to the contrary, Aspen indicates that it continues business regardless.  In addition, placement of the funds in an interest bearing account all but eliminates any loss of use of the funds Aspen might otherwise suffer.

Finally, a stay will also serve the public interest by maintaining the status quo during the appeal of this case of first impression and ensuring that liability judgments issued by this Court are enforceable rather than hollow.  Certainly, where the public interest does not weigh in favor of the non-movant, a stay pending appeal is proper.  In re Tower Automotive, Inc., 2007 WL 1975447, at *2.

Accordingly, if the attachments are vacated and the funds restrained with the garnishees are released, the only damages Aspen will arguably have suffered would be the costs of this action and costs of responding to PSL's appeal.  Conversely, if the court does not stay enforcement of the "So Ordered" opinion vacating the attachment and PSL subsequently prevails on appeal, PSL will have achieved a hollow victory, as it will likely be left with an order of attachment against no property in the district.  As the public

8

interest does not favor Aspen, and PSL has made a substantial possibility of success on appeal, the Court should stay execution of its order pending PSL's appeal.

## **CONCLUSION**

For the foregoing reasons, PSL respectfully submits that its motion for a stay pending appeal of enforcement of the Court's "So Ordered" Opinion of February 1, 2008, vacating the attachments against the property of Aspen should be granted.

Dated: February 7, 2008
     New York, NY

                              Respectfully submitted,

                              HILL RIVKINS & HAYDEN LLP
                              Attorneys for Plaintiff ProShipLine, Inc.

By:     John J. Sullivan (JS 1037)
          Christopher M. Panagos (CP-2199)
          45 Broadway, Suite 1500
          New York, New York 10006
          Tel: 212-669-0600
          Fax: 212-669-0699