**DeOrchis Wiener & Partners, LLP**
61 Broadway, 26th Floor
New York, New York 10006-2802
(212) 344-4700

*Attorneys for Defendant*
**ASPEN INFRASTRUCTURES LTD.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
PROSHIPLINE, INC.,

                        Plaintiff,

    - against -

ASPEN INFRASTRUCTURES LTD., F/K/A
SUZLON INFRASTRUCTURE LTD.,

                        Defendant.
-----------------------------------------------------------X

07 Civ. 10969 (RWS)

**DECLARATION OF SANJEEV BANGAD IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION BY WAY OF ORDER TO SHOW CAUSE FOR A STAY OF EXECUTION OF THE COURT'S ORDER VACATING THE MARITIME ATTACHMENT WITHOUT POSTING A FULL SUPERDEAS BOND**

**I, SANJEEV BANGAD DECLARES UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES THAT THE FOLLOWING IS TRUE AND CORRECT:**

1. I am the general manager of defendant Aspen Infrastructures, Ltd., ("AIL") and make this Declaration in Opposition to plaintiff, ProShipLine Inc.'s application for a stay of execution of the Court's February 1, 2008 Opinion, pending appeal and/or approval of a substitute or reduced supersedeas bond. For the sake of brevity, I refer to my previous Declaration made in these proceedings on 9th January 2008, which I incorporate herein.

2. This Honorable Court has already Ordered that the attachment of US$ 2,353,110.55 in the Southern District of New York be vacated. This is a substantial amount of money that is essential to AIL to enable it to conduct its business in the US and elsewhere. If the attachment is not now vacated then AIL's ability to do business will continue to be severely hampered.



3. It is naïve to suggest, as I understand ProShipLine seek to do, that putting the funds into an interest bearing account would mean that AIL would suffer no prejudice. The prejudice that AIL is suffering is not from the lack of interest on the attached funds, it is from the lack of use of those funds. At AIL the profits, if any, stay invested and withdrawal of funds affects it's cash flow and thus ability to do business. AIL can not survive by putting its cash flow in banks for earning interest specially since ship operating business has low profitability and high cash requirements. To any business concern, idle money is useless money, simple interest will not take the place of the ability to put that money to work. No amount of monetary damages could possibly compensate AIL for the loss of the business opportunities that the continued attachment of its working capital will cause.

4. EP-Team and ProShipLine know very well from having been involved with our business for over 15 months, the deprivation from AIL's cash flow of this sort of money is likely to have a devastating impact on AIL's business. Indeed I believe that this knowledge is the basis for the strategy of EP-Team and ProShipLine which seems to me to be nothing but a concerted attempt to affect AIL's ability to do business. It is to the knowledge of EP Team and Proshipline that while they were administering the impress account for AIL, there was no occasion when they had USD 2.4 million sitting in the impress account for more than a few days. EP-Team and ProShipLine, since November 2007, have systematically attempted to interfere with every chartered vessel that AIL has attempted to bring into American ports, in both Texas and Washington. The Southern District of Texas has ruled that they cannot attach AIL vessels in that jurisdiction because both AIL and ProShipLine are located in the Southern District of Texas. *See Orzel July 9, 2008 Declaration at Ex. J.* AIL has had every vessel which has called in the State of Washington at its direction interfered with by ProShipLine and EP-Team. AIL has had to post security or physically give-up possession of property in the amount of US$677,539.00. In addition, ProShipLine and EP-Team have admitted that they are holding at least US$684,328.07 in funds that they concede belong to AIL.

5. I confirm that AIL is suffering substantial disruption to its business and is severely hampered in its ability to carry on its business by reason of the attachment of its assets to the value of US$ 3,030,649.55 in two jurisdictions (US$ 2,353,110.55 in the Southern District of New York and US$ 677,539.00 in the Western District of Washington) in addition to the retention in Houston of at least US$ 684,328.07 that belongs to AIL. This means that to date at



2

least US$ 3,714,977.62 belonging to AIL has been withheld without due process or attached by EP-Team and ProShipLine in support of claims, the basis of which I am unable to understand.

6. As I pointed-out in my prior Declaration, Aspen entered into a Sales and Logistics Services Agreement with EP-Team. EP-Team claims to have assigned its rights under that Agreement to ProShipLine. The Agreement has no guarantee by AIL that it will provide a minimum number of vessels under the Agreement. It also does not prohibit AIL from simply sub-chartering all of its vessels under to a third party which would not be obligated to use the services of EP-Team/ProShipLine. Despite the complete lack of any potential damages under the Agreement, EP-Team and ProShipLine have been able to deprive AIL of the use of US$3,714,977.62. So far, neither EP-Team nor ProShipLine have actually brought a claim in either Singapore arbitration or in any of the four law suits that have been filed in the United States for their alleged damages.

7. If ProShipLine are allowed to maintain the attachment despite the Court's Order that it should be vacated, AIL is likely to suffer substantial further damage. It will continue to lose business opportunities and put at risk the confidence of it business partners, investors and share holders. AIL continues to do business in the US, including in Washington. As the Court has appreciated, the claims made by ProShipLine are based on the theory that ProShipLine would suffer losses following termination of the Agreement. They are not based on any actual losses suffered by EP-Team or ProShipLine during the currency of the Agreement. In fact the only "calculations" of ProShipLine's "claim and damages" is a spreadsheet that is attached to Neil Johnson's Declaration of 16th January 2008. This spreadsheet in fact contains a completely unrealistic calculation of "Lost Revenue" (not loss or damage) on the basis of what they say they would have received in commission up to 10th March 2010 (not 2009 as stated in the spreadsheet). This is entirely speculative and unrealistic, something that can easily be demonstrated: amongst other things (1) AIL was not under any obligation to make space available on its time-chartered ships to be used by EP-Team (or ProShipLine) in the first place; (2) it is ridiculous to suggest that any commission earned would have been pure profit and that EP-Team and ProShipLine had no expenses; and (3) there is no reason why EP-Team or ProShipLine could not ship cargos on other vessels.



3

8. Thus while AIL is likely to substantial prejudice if the stay is allowed to continue, I cannot see that ProShipLine will suffer any prejudice at all if it is not. There is no evidence that it has in fact been deprived of any business or revenue, let alone suffered any loss or damage.

9. Furthermore, I would point out that more than 6 months has now passed since EP-Team and ProShipLine say that their claims arose and neither has made any effort at all to actually bring proceedings in respect of the alleged claim. Instead, EP-Team, against which AIL commenced proceedings in Singapore in accordance with the contract on 30th August 2007, first delayed appointment of its arbitrator in response to AIL's appointment until 12th October 2007, and then eventually on 14th December 2007, the day before it was due to file its Defense to AIL's claims, gave notice that it has assigned all its claims under the agreement to ProShipLine. In the meantime despite the fact that EP-Team and ProShipLine claim that the Agreement was assigned or otherwise transferred by EP-Team to ProShipLine, ProShipLine has still not commenced proceedings for its alleged multi-million dollar claim against AIL.

Although neither EP-Team nor ProShipLine have commenced proceedings in respect of the alleged claim against AIL, they continue to seek to attach assets belonging to AIL. Although in New York ProShipLine's lawyers, Hill Rivkins (that also acted for EP-Team in the Southern District of Texas alongside Shannon Gracey that also act for both companies) have said to AIL's lawyers that they do not intend to attach any further money belonging to AIL in New York, they have not replied to the question whether they will agree that the attachments they obtained in Washington should be set aside. The implication of their Motion for a stay of execution pending appeal is that they will not agree to this and that they will consider themselves free to continue to attach AIL's assets in the District of West Washington.

10. 11. Although AIL is seeking to set aside the attachment in the District of West Washington on grounds that include the grounds on which the Court has decided to vacate the attachment in the Southern District of New York (save for the ground that AIL was already present in the jurisdiction through its Complaint and attachment of EP-Team's assets in this jurisdiction which does not apply in West Washington because there EP-Team and ProShipLine brought their attachment proceedings jointly), it may be some time before the Court makes its decision and in the meantime further AIL time chartered ships that call in that jurisdiction are likely to be subject to attachment of any AIL assets on board. This will undermine the Court's



4

judgment in this jurisdiction setting aside the attachment and will cause further disruption and prejudice to the business of AIL.

DATED this _11___ day of February, 2008 at ____Pune, India_____

Sanjeev Bangad_____